437 So.2d 900 (1983)
Virginia CALHOUN, Plaintiff-Appellee,
v.
FIREMAN'S FUND INSURANCE COMPANIES, Defendant-Appellant.
No. 15499-CA.
Court of Appeal of Louisiana, Second Circuit.
August 15, 1983.
*901 Watson, Murchison, Crews, Arthur & Corkern by William P. Crews, Jr., Natchitoches, for defendant-appellant.
Whitehead & McCoy by C.R. Whitehead, Jr., Natchitoches, for plaintiff-appellee.
Before MARVIN, FRED W. JONES, Jr. and SEXTON, JJ.
SEXTON, Judge.
Plaintiff filed suit seeking worker's compensation benefits for total and permanent disability, statutory penalties, and attorney fees. The trial court awarded plaintiff compensation benefits for total and permanent disability under the "odd lot" doctrine, and rejected plaintiff's claims for statutory penalties and attorney's fees. We affirm.
Plaintiff in this cause is Virginia Calhoun, a black 31 year old female, residing in Coushatta. Defendant is Associated Indemnity Company, the insurer of defendant's former employer, Country Pride Foods, Ltd. (hereinafter referred to as Country Pride). Defendant Associated Indemnity was referred to throughout trial proceedings as Fireman's Fund Insurance Companies (hereinafter referred to as Fireman's Fund), a group of insurance companies of which Associated Indemnity is a member.
Virginia Calhoun began working on September 14, 1979, at a poultry processing plant operated by Country Pride in Natchitoches. She was paid $132 per week from September until December. Her job involved taking the neck, heart, and gizzard of a chicken from an assembly line conveyor belt, and wrapping these three chicken parts in a single wrapper. Country Pride's production quota required that Ms. Calhoun complete 15 wrappings per minute.
In December of 1979 Ms. Calhoun was redesignated as a "stuffer." As a "stuffer," Ms. Calhoun placed the chicken parts, which had already been packaged by "wrappers," into the cavity of chickens passing her on a conveyor belt. Ms. Calhoun's work stations, while she was employed as both a "wrapper" and a "stuffer," were kept at subfreezing temperatures by the plant's internal cooling system. Ms. Calhoun testified that she worked non-stop at both positions for approximately nine hours a day, excluding a 15 minute mid-morning coffee break and a 45 minute lunch break. She remained in her position as a stuffer from December of 1979, until she left the employ of Country Pride in March of 1980.
Plaintiff first started experiencing pain in November of 1979. At that time, plaintiff felt cold, numbness and a dull aching pain in the fingers of her right hand. Ms. Calhoun originally thought that the pain was a result of the cold temperatures in which she was working. To that end, she purchased insulated gloves and periodically ran warm water over her hand. However, these measures were inadequate and the pain in her right hand intensified. Plaintiff's painful condition eventually worsened to the degree that she was unable to work for longer than ten minutes without holding her hand down to allow full circulation of blood to her hand and lessen the pain. This condition persisted for several weeks before she consulted a nurse employed by Country Pride.
Ms. Calhoun was removed from her position as a wrapper and reassigned as a stuffer in order to improve her painful condition. On March 5, 1980, while still suffering from this condition, she was discharged for fighting with a co-employee.
On February 25, 1980, approximately a week and a half before her discharge from the employ of Country Pride, plaintiff was examined by Dr. Jeffrey Donat, Director of the EMG Laboratory, Louisiana State University Medical Center at Shreveport. Dr. Donat diagnosed plaintiff's pain and disability as emanating from a "carpal tunnel syndrome" present in both wrists and advised plaintiff in a written report that the condition "represents a significant disability and requires orthopedic surgery."
Plaintiff was surgically treated by plastic and reconstructive surgeon, Dr. Simeon Wall of Shreveport. Dr. Wall confirmed Dr. Donat's earlier diagnosis that plaintiff suffered from carpal tunnel syndrome in *902 both wrists. Dr. Wall defined carpal tunnel syndrome as a condition in which there is an internal or external compression of the median nerve, the primary nerve supplying nervous impulses to the hand.
The median nerve extends from the forearm to the fingers, and passes through and is encased in a long and narrow "tube," "tunnel" or "canal" of ligaments. Carpal tunnel syndrome occurs when the median nerve swells and expands and thereby becomes abnormally constricted by the inelastic tunnel of ligaments through which it passes. This abnormal compression of the median nerve adversely affects both the motor and sensory functions of the hand.
Dr. Wall first examined plaintiff on May 27, 1980. Plaintiff complained of pain in both wrists at that time, although she experienced greater pain in her right wrist. Conservative treatment failed to improve the plaintiff and on September 18, 1980, Dr. Wall performed surgery on plaintiff's right wrist. In surgery, Dr. Wall detected a pronounced yellow discoloration and flattening of the nerve. Dr. Wall subsequently released plaintiff to light duty on November 17, 1980.
Dr. Wall subsequently performed a double surgery on plaintiff's left wrist on November 5, 1981. At that time, Dr. Wall released the ligaments of plaintiff's left carpal tunnel. He also released and removed the ligaments of plaintiff's left ulnar tunnel as well since plaintiff had experienced pain in her left little finger, which pain indicated an abnormal compression of her left ulnar nerve. Dr. Wall's surgery revealed a flattening and discoloration of the left median and ulnar nervessymptoms indicative of nerve compressionand a substantially reduced blood supply to the left hand.
On January 15, 1982, Dr. Wall issued plaintiff a conditional work release, stipulating that plaintiff should refrain from rapid and repetitive wrist motions. A similar release was executed by Dr. Wall on January 22, 1982.
Fireman's Fund began making compensation payments on March 29, 1980, and terminated compensation benefits on approximately January 26, 1982, pursuant to Dr. Wall's work release.
Plaintiff filed suit for compensation benefits, statutory penalties and attorney's fees on August 14, 1981, at which time Fireman's Fund had not discontinued benefits, but had merely alluded to the possibility that they might do so.
In a judgment rendered December 6, 1982, the trial court awarded plaintiff total and permanent disability benefits commencing on March 5, 1980, and rejected plaintiff's claims for statutory penalties and attorney's fees. The defendant only has appealed.
Defendant has not contested on appeal that plaintiff suffered an on-the-job injury which caused compensable disability. Thus, the sole issue to be decided on this appeal concerns the extent of plaintiff's disability. Defendant contends that the trial court erred in classifying claimant, Virginia Calhoun, as totally and permanently disabled, contending that claimant suffered only from either a total and temporary or a partial disability.
In making this contention, the defendant emphasized several aspects of Dr. Wall's testimony. Dr. Wall testified that, although repetitive flexion of plaintiff's wrists probably caused her disability, "there are other types of motions I'm sure that she possibly could do well with." Dr. Wall opined that, at the time of trial, plaintiff could handle gainful employment as long as she refrained from rapid, repetitive motions of the wrist.
Dr. Wall testified further that,
"I would feel that the type of motion that she could be involved in are the types in which her wrist is cocked up, in which she mainly uses the so-called extensor or the tendons on top of her hand. Also, I feel that the problems that irritate the median and ulna nerve in the carpal tunnel are the so-called extreme flexion or bending the wrist downward in a forceful manner. And I think this is what creates the problem with the carpal tunnel.

*903 There are many repetitive motions of the hand which can be carried out, which are not irritating to the wrist."
Although the defense argument based on Dr. Wall's actions and testimony is persuasive, it is not dispositive given the totality of the evidence adduced. We believe that there is more than enough evidence to support the trial court's determination of total and permanent disability.
The trial court could have reasonably found that the work release issued by Dr. Wall on January 15 and 22 of 1982, subsequent to both surgeries, did not conclusively establish plaintiff's freedom from disability. Ms. Calhoun testified in describing her post-surgical condition which prevailed at the time of trial, that she was unable to lift pots off the stove, open a car door, open a window or mop. Plaintiff testified that, because of pain, she was periodically unable even to drive; she stated that she often encountered great pain merely in placing her hands in an upright position on the steering wheel. She averred that the presence of intense pain in her hand varied in frequency from once a week to daily. She stated that, "The numbness comes almost every night. It is worse when it is cloudy, wet or rainy. It stays there constantly every day." Ms. Calhoun further testified that she suffered from periodic bouts of intense pain, and that "when the pain is real bad, I put it in the sling that Dr. Wall gave me, so that I can hold it in one position."
When carefully considered, Ms. Calhoun's reports of disability and subjective pain were not inconsistent with Dr. Wall's expert testimony. Dr. Wall stated that patients suffering from carpal tunnel syndrome "sometimes do not get complete regeneration of [the median nerve] and sometimes they do have a shooting pain secondary to the regeneration." Dr. Wall testified that carpal tunnel syndrome may cause pain all the way up to the elbow; that in the past Ms. Calhoun's subjective complaints of pain had been tied to objective and medically verifiable medical conditions; and that he would have to conduct further examination of the plaintiff before he would have a basis for disbelieving Ms. Calhoun's claims of subjective pain.
Dr. Wall repeatedly emphasized that Ms. Calhoun refrain from employment involving rapid, repetitive motions of the wrists "because of the possibility of recreating the same problems." Dr. Wall expressly affirmed that plaintiff had a disability in both wrists to engage in any type of gainful occupation that would require repetitive wrist motions.
The doctor noted that inadequate post-surgical regeneration of the median nerve is a common occurrence in carpal tunnel syndrome patients. He further explained that:
"If there is not a complete regeneration of motor nerves, then sometimes there can be weakness in the muscles of the hand or the intrinsic muscles of the hand...."
The trial court's decree of total and permanent disability was ultimately based on the determination that Virginia Calhoun was unable to adequately perform either manual or clerical duties and that she was therefore an "odd-lot" worker. The court's finding that she was unable to perform manual labor was predicated upon Dr. Wall's oft-reiterated observation that work involving constant use of the wrists would re-aggravate her condition. The court's finding that she was unable to perform manual labor was further predicated upon claimant's testimony that she was unable to perform the simplest of tasks, and that she often encountered intense pain merely in holding her wrists in an upright position.
At trial the defendant attempted to contest plaintiff's contention that she was unable to perform manual labor by detailing the variety of manual jobs available at Country Pride's Natchitoches poultry plant. The trial court nevertheless observed that all of the jobs described involved constant and repetitive use of the wrists.
A trial court may accept a claimant's lay testimony which differs in certain respects from the medical testimony presented where the lay and medical testimony *904 are neither medically nor logically inconsistent. See Tantillo v. Liberty Mutual Insurance Co., 315 So.2d 743, 748 (La. 1975). Disability, within the framework of the Worker's Compensation Act, is a legal rather than purely medical determination. The notion that the trial court may consider lay testimony only where there is a conflict in the medical testimony was firmly laid to rest in Tantillo. The current view is that the trial court is duty-bound to assess all of the evidence presented. Tantillo, supra; Woods v. Petroleum Helicopters, Inc., 415 So.2d 978 (La.App. 1st Cir.1982); Johnson v. Fireman's Fund Insurance Co., 389 So.2d 1139 (La.App. 3d Cir.1980).
The defense further attempted to establish that plaintiff, who typed 55 words a minute, was qualified for clerical employment. However, the trial court found that a reasonably continuous and stable market did not exist for her clerical services. As professor and rehabilitation specialist Dr. Richard Galloway testified, virtually the only clerical jobs available in Red River Parish exist in doctors' and lawyers' offices; moreover, the claimant is unqualified for these positions because, according to her scores on standarized tests, her mathematical skills are those of a sixth grader, and her spelling and reading skills are those of an eighth grader. The trial court's finding that claimant was not qualified for clerical positions was corroborated by the fact that claimant's application for clerical employment was expressly rejected by Country Pride, and by the observation of rehabilitation specialist Jo Taylor that her area "is not culturally receptive to black persons in an office setting."
We conclude that, given claimant's capabilities and work related disabilities, the trial court did not err in finding that a reasonably continuous and stable market did not exist for either the manual or clerical duties which the claimant was able to render. Therefore, under Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980), the trial court did not err in classifying the claimant as totally disabled under the odd-lot doctrine.
Furthermore where, as here, the total disability exists at the time of trial and is of indefinite duration, that total disability must properly be classed as permanent. Carruth v. Louisiana Motor Inns, 389 So.2d 99 (La.App. 4th Cir.1980); Schriner v. Riverside Companies, Inc., 378 So.2d 1035 (La. App. 2d Cir.1979), writ denied 380 So.2d 1368 (La.1980); Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985 (La.1976).
For the foregoing reasons, the judgment of the trial court is affirmed, and all costs of this appeal are assessed to defendant-appellant.
AFFIRMED.