568 So.2d 244 (1990)
John LeDOUX, Plaintiff-Appellee,
v.
Kenneth ROBINSON and American Casualty Insurance Company, Defendants-Appellants.
No. 89-468.
Court of Appeal of Louisiana, Third Circuit.
October 3, 1990.
Scofield, Gerard, Veron, Hoskins & Soileau, John Pohorelsky, Lake Charles, for plaintiff-appellee.
Plauche, Smith & Nieset, A.R. Johnson, IV, Lake Charles, for defendants-appellants.
Before DOMENGEAUX, C.J., and FORET and KNOLL, JJ.
FORET, Judge.
This is a worker's compensation action filed by John LeDoux against his employer, Kenneth Robinson, and his insurer, American Casualty Insurance Company (American Casualty). The trial court rendered judgment in favor of plaintiff, reinstating weekly compensation benefits and awarding penalties and attorney's fees. Additionally, the trial court ordered defendants to pay the cost of certain diagnostic tests recommended by plaintiff's physicians. Defendants have appealed the trial court's judgment and plaintiff has answered the appeal, requesting an increase in the trial court's award of attorney's fees.

FACTS
On August 29, 1986, plaintiff injured his neck while working for defendant, Kenneth *245 Robinson, in his farming operations. The injury occurred while plaintiff was lifting a tool box weighing approximately seventy-five pounds. Although plaintiff felt pain immediately in his shoulder and neck area, he continued to work for Robinson for another four or five days before seeking medical attention. Additionally, plaintiff was treated by Dr. Violet Long, a chiropractor, for approximately two weeks. Thereafter, plaintiff consulted Dr. A.C. Broussard, who referred him to Dr. Gerald Litel, a neurosurgeon, for further treatment.
Plaintiff first saw Dr. Litel on October 22, 1986, complaining of pain in the mid and upper portions of his back, neck pain, and pain radiating into his left arm. Thereafter, Dr. Litel hospitalized plaintiff at St. Patrick's Hospital in Lake Charles on November 23, 1986. A cervical myelogram was performed, which revealed a herniated disc at C7-T1. Accordingly, Dr. Litel performed a cervical laminectomy on November 25, 1986, and plaintiff was released from the hospital on November 27, 1986.
Following the surgery, Dr. Litel continued to treat plaintiff on a regular basis until March 25, 1987, at which time he released plaintiff to return to work without any limitations. However, Dr. Litel did assign a 15% partial permanent disability to plaintiff as a result of the injury and surgery.
Despite having been released by Dr. Litel, plaintiff continued to complain of neck and shoulder pain as well as pain radiating into his left arm. Plaintiff consulted an attorney who arranged for him to see Dr. R. Dale Bernauer, an orthopedic surgeon practicing in Lake Charles. Plaintiff first saw Dr. Bernauer on April 29, 1987. At this time, Dr. Bernauer noted a decreased range of motion. He further stated that he conducted a neurological examination which revealed decreased reflexes in the left arm. Dr. Bernauer's preliminary diagnosis was recurrent disc herniation at C7-T1, and he recommended that plaintiff undergo an MRI (Magnetic Resonance Imaging) in order to confirm this diagnosis. Dr. Bernauer's opinions in this regard were set forth in his medical report directed to plaintiff's attorney, dated May 4, 1987.
Thereafter, by letter from defendants' attorney dated August 13, 1987, Dr. Litel was asked to review Dr. Bernauer's medical report of May 4, 1987 and state his views with regard to Dr. Bernauer's diagnosis and recommendations. By letter dated August 26, 1987, Dr. Litel disagreed strongly with Dr. Bernauer's diagnosis and reaffirmed his earlier position that plaintiff should be able to return to his usual occupation without difficulty. However, on December 7, 1987, Dr. Litel examined plaintiff in order to render an opinion as to the cause of plaintiff's continued complaints of pain. At this time, Dr. Litel acknowledged that he may have been wrong in categorically stating that plaintiff does not have a recurrent herniation and he suggested that plaintiff undergo another myelogram in order to make a definitive diagnosis. On the basis of Dr. Litel's recommendations, American Casualty reinstated worker's compensation benefits retroactive to April 1, 1987, and authorized payment for additional diagnostic tests, including the MRI recommended by Dr. Bernauer, as well as the myelogram suggested by Dr. Litel. These tests were conducted in January of 1988, and both the MRI and the myelogram were normal. At this point, unable to determine the cause of plaintiff's continued complaints, Dr. Bernauer referred plaintiff to Dr. William Foster, a neurosurgeon, who first examined plaintiff on March 8, 1988. According to Dr. Foster, plaintiff complained of headaches, paresthesia and weakness of the left arm, as well as left arm pain which appeared to follow the ulnar nerve distribution. While Dr. Foster was unable to render a definitive diagnosis, he theorized that plaintiff may be suffering from any one of the following: a. stretch injury of the brachial plexus, b. failed neck syndrome, c. thoracic outlet syndrome. He recommended that plaintiff undergo a CT scan of the head, as well as an EMG of the left upper extremity. Dr. Foster's findings and recommendations are contained in his report issued to plaintiff's counsel dated March 18, 1988.
*246 Upon receiving Dr. Foster's March 18, 1988 report, counsel for defendants forwarded a copy of same to Dr. Litel, together with the results of the MRI and myelogram studies performed earlier in the year, and requested Dr. Litel's opinion with regard to Dr. Foster's findings and recommendations. Dr. Litel responded by letter dated May 13, 1988, advising defendants' attorney that he did not feel that plaintiff had any of the conditions listed in Dr. Foster's report of March 18, 1988. He further stated that he did not feel that any additional tests were indicated and reiterated his position that plaintiff was capable of returning to normal activity.
On the basis of Dr. Litel's report, American Casualty terminated weekly compensation benefits effective May 18, 1988, and refused payment for any additional tests.
After reviewing the evidence adduced at trial, the trial court held as follows:
a. Defendants were held liable for statutory penalties and attorney's fees for terminating benefits on May 18, 1988, which attorney's fees were fixed at the sum of $2,500.
b. Plaintiff's worker's compensation benefits were reinstated effective May 18, 1988.
c. Defendants were ordered to pay for the left upper extremity EMG and CAT scan recommended by Dr. Foster and Dr. Bernauer.
On appeal, defendants assign the following errors:
1. The trial court erred in finding defendants liable for penalties and attorney's fees for terminating benefits on May 18, 1988.
2. The trial court erred in ordering defendants to reinstate worker's compensation benefits from May 18, 1988.
3. The trial court erred in ordering defendants to pay for the left upper extremity EMG and CAT scan recommended by Dr. Foster and Dr. Bernauer.
4. The trial court erred in ordering defendants to pay legal interest on the above and court costs.

ASSIGNMENT OF ERROR NO. 1
In their first assignment of error, defendants complain that the trial court erred in finding that the defendants were liable for penalties and attorney's fees for terminating worker's compensation benefits on May 18, 1988. We agree. Upon receipt of Dr. Foster's March 18, 1988 medical report recommending additional tests, American Casualty's attorney immediately forwarded same to Dr. Litel for his review. Dr. Litel responded by letter dated May 13, 1988, stating that no additional tests were necessary and advising that plaintiff should be able to resume normal activity. On the basis of this report, American Casualty terminated benefits effective May 18, 1988.
The record will reflect that Dr. Litel was plaintiff's original treating physician. On November 25, 1986, Dr. Litel performed a cervical laminectomy on plaintiff and treated him on a regular basis for several months thereafter. Considering this, his opinion as to plaintiff's medical status and ability to resume normal activities should not be taken lightly. In view of Dr. Litel's findings, we hold that the trial court erred in finding the defendants liable for penalties and attorney's fees. Termination of worker's compensation benefits is not considered arbitrary or capricious where the insurer bases its decision to terminate on competent medical advice. Jim Walter Homes v. Lewis, 544 So.2d 485 (La.App. 2 Cir.1989); Bernard v. Woodrow Wilson Const., Inc., 526 So.2d 1248 (La.App. 3 Cir.1988), writ denied, 528 So.2d 152 (La. 1988). Dr. Litel's May 13, 1988 medical report clearly gave defendants reasonable grounds to contest plaintiff's claim for additional worker's compensation benefits and accordingly, we reverse the trial court's award of penalties and attorney's fees.

ASSIGNMENT OF ERROR NO. 2
In their second assignment of error, defendants maintain that the trial court erred in ordering defendants to reinstate worker's compensation benefits from May 18, 1988. We disagree. The trial court was clearly impressed by the sincerity of plaintiff's *247 complaints of pain. Even Dr. Litel, who now feels that plaintiff can return to work, stated that he found plaintiff to be truthful in his complaints of pain. Furthermore, both Dr. Bernauer and Dr. Foster are of the opinion that additional tests should be conducted before plaintiff attempts to return to any work activity.
Considering the above, we find no manifest error in the trial court's finding that plaintiff is totally disabled. We note, however, that the trial court did not state whether or not plaintiff is adjudged to be entitled to temporary total or permanent total disability benefits. Prior to the 1983 amendments to our Worker's Compensation Act, an employee was entitled to permanent total disability benefits upon a showing that his disability was of indefinite duration. Mazoch v. Employers Cas. Co., 514 So.2d 1184 (La.App. 1 Cir.1987), writ denied, 517 So.2d 812 (La.1988). However, under our present law, in order for an employee to be entitled to permanent total disability benefits, he must demonstrate, by clear and convincing evidence, that his disability is permanent and not simply of indefinite duration. R.S. 23:1221(2); Brewster v. Manville Forest Products Corp., 469 So.2d 340 (La.App. 2 Cir.1985); Mazoch v. Employers Cas. Co., supra. In Brewster, our brothers of the Second Circuit stated the following in finding that the employee was entitled to temporary total disability benefits:
"Plaintiff has shown, however, that he was injured and suffered a disability which continued through the date of trial in May, 1984. The record established that the plaintiff was unable to perform any physical labor or to engage in any other gainful occupation. At the time of trial, plaintiff was in a healing and recovery period, particularly since he was unable to obtain the necessary test and probable surgery due to a lack of finances and the refusal of the defendant to pay for these expenses. The evidence shows that with further testing and treatment, plaintiff will most likely recover within a foreseeable, but indefinite, period of time.
While the evidence shows that the plaintiff should recover to a point where he will be able to engage in some type of gainful occupation, at the time of trial plaintiff's condition had not stabilized and he was in need of further medical testing and treatment. Under these circumstances, plaintiff's disability would be a temporary total disability rather than permanent.
Therefore, this court finds that when an injured manual laborer is disabled at the time of trial from performing physical labor and is still undergoing medical testing and treatment with an indefinite recovery period, yet it appears reasonably certain he will be able to engage in the same or other gainful occupation within a foreseeable period of time, he is entitled to benefits for temporary total disability.
This finding of total temporary disability is subject to the rights of either party to seek a modification of this judgment pursuant to LSA-R.S. 23:1331, should plaintiff experience a change in his condition.
It has been previously held that if a total disability exists at the date of trial and is of indefinite duration, this disability must be properly classed as permanent in nature. See Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985 (La. 1976), LeBaron v. Louisiana Pacific Corp., 434 So.2d 496 (La.App. 2d Cir. 1983), writ denied 440 So.2d 758 (La. 1983), Calhoun v. Fireman's Fund Ins. Companies, 437 So.2d 900 (La.App. 2d Cir.1983) and numerous citations therein.
However, it does not appear that this jurisprudence is applicable under the new worker's compensation law which has changed the definition of permanent total disability and the claimant's burden of proof thereof."
Turning now to the facts of the instant case, plaintiff clearly has not established his entitlement to permanent total disability benefits as it has by no means been established that his disability is of a permanent nature. In fact, the exact cause of his continued complaints of pain has yet to be determined and will only be known when further tests are conducted. Considering this, we find that plaintiff's disability is of indefinite duration and accordingly, plaintiff *248 is entitled to temporary total disability benefits. We find defendants' second assignment of error to be without merit. However, we amend the trial court's judgment to state that plaintiff is entitled to temporary total disability benefits (as opposed to permanent total disability benefits) at the rate of $133.34 per week during the period of his disability.

ASSIGNMENT OF ERROR NO. 3
In their third assignment of error, defendants maintain that the trial court erred in ordering defendants to pay for the EMG and CAT scan recommended by Dr. Foster and Dr. Bernauer. We disagree. Dr. Foster and Dr. Bernauer both stated that these tests were necessary in order to make a definitive diagnosis of injury. Dr. Bernauer, plaintiff's current treating physician, has seen plaintiff on a regular basis since April 29, 1987, and his opinions and recommendations are therefore entitled to great weight. We find no manifest error in the trial court's determination that the defendants should bear the cost of the EMG and the CAT scan studies recommended by Drs. Foster and Bernauer. Accordingly, defendants' third assignment of error is found to be without merit.

ASSIGNMENT OF ERROR NO. 4
Defendants also complain that the trial court erred in awarding legal interest from May 18, 1988, on weekly compensation benefits, penalties, and attorney's fees. We have reversed the trial court's award of penalties and attorney's fees and therefore need only discuss the trial court's award of interest on weekly compensation benefits from May 18, 1988. Insofar as this award is concerned, we find that the trial court did err in awarding legal interest on weekly compensation benefits from May 18, 1988. It is well established that legal interest on weekly compensation benefits is to be awarded from the due date of each installment. Bordelon v. Vulcan Materials Co., 472 So.2d 5 (La.1985). We therefore amend the trial court's judgment to provide legal interest on each installment of compensation from its due date until paid.
Lastly, defendants complain that the trial court erred in ordering defendants to pay court costs. Defendants were cast in judgment at trial and therefore, the trial court properly ordered them to pay court costs.

PLAINTIFF'S ANSWER TO APPEAL
As noted earlier, plaintiff has filed an answer to the appeal, asking that the trial court's award of attorney's fees be increased to cover legal fees incurred in connection with this appeal. In view of the fact that we have reversed the trial court's award of penalties and attorney's fees, plaintiff's request for additional attorney's fees incurred in connection with this appeal must be denied.
Considering the above and foregoing, the judgment of the trial court is amended to provide that plaintiff is entitled to temporary total disability benefits at the rate of $133.34 per week from May 18, 1988, during the period of his disability, together with legal interest on each installment of compensation from due date until paid. The trial court's award of penalties and attorney's fees is hereby reversed.
In all other respects, the trial court's judgment is affirmed. Costs of this appeal are to be divided one-half to defendants, Kenneth Robinson and American Casualty Insurance Company and one-half to plaintiff, John LeDoux.
AMENDED IN PART, REVERSED IN PART AND RENDERED.