636 So.2d 1177 (1994)
Ricky BELAIRE, Plaintiff-Appellant,
v.
L & L OIL COMPANY, Defendant-Appellee.
No. 93-1198.
Court of Appeal of Louisiana, Third Circuit.
May 4, 1994.
Rehearing Denied June 20, 1994.
*1178 Jacque Berchmans Pucheu, Jr., Eunice, for Ricky Belaire.
Charles J. Foret, Lafayette, for L & L Oil Company.
Before GUIDRY, C.J., and DOUCET and COOKS, JJ.
GUIDRY, Chief Judge.
Plaintiff, Ricky Belaire, appeals a judgment of the Office of Worker's Compensation Administration (OWC) denying his entitlement to benefits beyond June 11, 1991.

FACTS
This case arises out of a work-related accident which occurred on Friday, March 30, 1990. On that date, plaintiff, Ricky Belaire, *1179 an employee of L & L Oil Company, was working on one of the company's land based rigs. The rig crew was in the process of "coming out of the hole" with wash pipe. Belaire would balance or brace one or more sections of wash pipe against his legs before letting them roll to the rig floor. As the elevator released one section of pipe the weight caused Belaire to stumble backwards while twisting to the side. As a result, he strained his back. Belaire did not fall to the rig floor nor did his back make contact with any other object. L & L began compensation payments to Belaire on April 7, 1990.
Belaire first sought medical attention from his family practitioner, Dr. J.B. Hargroder, on April 2, 1990. Dr. Hargroder diagnosed Belaire's injury as a muscle sprain in the midlumbar area. By April 30th, Dr. Hargroder could no longer detect any muscle spasms and felt Belaire had full range of motion. However, because of continued complaints by his patient, he ordered both bone and CAT scans, both of which were normal. Dr. Hargroder discharged plaintiff July 9, 1990, finding no physical disability and opining that claimant did not appear willing to return to work.
On August 1, 1990, Belaire consulted Dr. Thomas B. Butaud, an orthopaedic surgeon. Dr. Butaud was of the opinion that claimant "probably [had] a muscular type problem". When an MRI he ordered failed to show any definite clinically significant problem, he referred plaintiff to Dr. James N. Domingue, a neurologist.
Dr. Domingue saw claimant on three occasions in 1990, could find no evidence of neurological dysfunction, and referred Belaire to Dr. Daniel Hodges, a physical medicine and rehabilitation specialist, who became Belaire's treating physician.
Dr. Hodges saw plaintiff initially on January 17, 1991 and subsequently on a regular basis on February 13, March 6, April 3, May 1, and June 4, 1991. Thereafter, there were two isolated visits: on August 8 and October 2, 1991. On the last visit claimant was referred by Dr. Hodges to Dr. J. Robert Rivet.
Dr. Hodges' report of his January 17, 1991 examination makes no mention of claimant mentioning any neck problems in the "history" section of the report. In his report of physical examination, Dr. Hodges does note some tenderness in Belaire's "upper trapezuis musculature", but the report of his neurologic examination gives no basis for these complaints. Dr. Hodges' overall impression of Belaire on this visit was that claimant had mechanical low back pain with some neck pain of myofascial origin. He was started on conservative treatment with medication and physical therapy. By Belaire's May 1, 1991 visit, Dr. Hodges' report indicates that claimant "... is nearing his maximum medical improvement" and that "I am going to go ahead and put him in a conditioning program for a few weeks and then obtain an FCE [Functional Capacity Evaluation]".
The FCE was done on May 28 and 29, 1991, and apparently showed plaintiff was capable of lifting a maximum of fifty pounds, thus placing his ability to work in the light to medium work category under U.S. Department of Labor guidelines.
Dr. Hodges' report of Belaire's June 4, 1991 visit states: "It looks like he could probably return to light to medium duty activity". However, his report also states: "I will follow-up with Ricky in about one month. Hopefully his insurance carrier can get rehab personnel involved so we can look at returning him to some sort of active work environment".
Apparently, Belaire's compensation payments were terminated based upon Dr. Hodges' statement that plaintiff could probably return to restricted work activity; Dr. Hargroder's discharge of Belaire in July of 1990; a reevaluation of claimant by Dr. Butaud on May 21, 1991, in which he states "... I ... really see no reason why he cannot return to his former type of employment"; and, the report of an independent medical examiner, Dr. Gregory Gidman, performed June 6, 1990 stating that he would start claimant back to work after three weeks of concentrated physical therapy.
Clearly, at the visit of June 4, 1991 claimant had not been released by his treating physician, Dr. Hodges, to return to his former duties and although his treating physician suggested the probability of his return *1180 to light or medium duty work, the record does not reflect an offer to plaintiff by the employer of this type of work.
On August 8, 1991, plaintiff returned to Dr. Hodges complaining of a "recent flare-up of neck discomfort". Dr. Hodges' notes from that visit state: "I feel he should be ready to return to work in the near future and am awaiting follow-up with his rehab personnel". In October, Belaire returned again complaining of neck pain. This prompted his referral to Dr. J. Robert Rivet. Shortly thereafter, Dr. Hodges moved his practice out of state.
Dr. J. Robert Rivet examined claimant on December 20, 1991. His report of that examination and review of Belaire's previous medical records indicate "... I see nothing of any significant abnormality in either his cervical or his lumbar area". Because Belaire's myelogram and CAT scan were about 13 months old at that time, Dr. Rivet suggested that they be repeated. This was finally accomplished in November or December of 1992, when both tests were repeated at Lafayette General.
On February 4, 1992, Belaire was involved in a vehicular accident where his stopped pick-up truck was struck from the rear by another vehicle. As a result of that accident, claimant consulted Dr. John Cobb on March 9, 1992. Dr. Cobb testified Belaire indicated he was seeking treatment as a result of the February 4th accident and unsatisfactory results from treatment, in connection therewith, by a Dr. Heinen in Eunice.
Belaire complained to Dr. Cobb of neck and back pain along with headaches, pain radiating into his shoulders and shoulder blades, numbness in the upper arms, and tingling sensations in both his arms and legs. Only in passing did he mention a previous injury in March of 1990. He did state, however, that he was having both neck and back pain before the February accident, which were exacerbated by the vehicular accident.
Belaire ended up with Dr. Rivet treating him for his neck complaints and Dr. Cobb for his back problem. Dr. Cobb had MRIs of the cervical and lumbar spine done on June 18, 1992 and November or December of 1992. Dr. Rivet had claimant hospitalized and repeated his myelogram and CAT scan.
Dr. Cobb could identify no real rupture or protrusion of the discs on the MRIs and Drs. Rivet and Domingue, who together reviewed the new myelogram and CAT scan, concluded that claimant would not benefit from any type of surgical intervention on his neck. Although they noted that he had neck complaints predating the February 1992 accident, they would not go so far as to state that these complaints were definitely attributable to his initial injury of March 30, 1990.
Although Dr. Cobb could not identify any ruptured disc on claimant's MRI, he was of the opinion that the disc at L5-S1 appeared abnormal. Therefore, on January 20, 1993, he performed a discogram on Belaire, a procedure which Dr. Cobb admits is a controversial diagnostic test among orthopaedic surgeons in the Lafayette area. Dr. Cobb interpreted the results of the discogram as showing the disc at L5-S1 to be "`abnormal' and... also a source of back pain". When questioned as to whether Belaire's accident of March 30, 1990 caused the "abnormal" condition of the affected disc, Dr. Cobb would go no further than to state that it was "possible... that he might have damaged or injured this disc". When pressed by plaintiff's attorney with the question "Would the on-the-job accident of March 30, 1990 have been one of the causes for his present disability?", Dr. Cobb could only answer "I would think probably so ...". Finally, Dr. Cobb stated that if plaintiff was willing to live with some ongoing pain, surgery was not necessary. And whether plaintiff had surgery or not, he would still limit him to light to medium work.
In the eleven months preceding trial, Belaire underwent three separate IMEs, two by Dr. Gregory Gidman (on May 27, 1992 and December 18, 1992) and one by Dr. James R. Lafleur (on March 4, 1993). Dr. Gidman's report of May 1992 states: "... I would release this man for regular duty activity at work.... Objectively, I think he looks fine". His December 1992 report states: "If one does not believe [Ricky's] ... subjective complaints of pain, I have no anatomic or orthopedic reason to restrict him from any type of work". After his examination, Dr. Lafleur *1181 wrote: "... I would recommend that he return to full duty at work".
In sum, there is no medical evidence to support a finding that claimant remained temporarily totally disabled past the date his compensation benefits were terminated. On the other hand, we find no consensus of opinion that he could have returned to full duty at that time.
On appeal, claimant-appellant argues the hearing officer erred in the following:
(1) In finding he failed to carry his burden of proof as to continuing temporary and total disability; or
(2) In the alternative, in not awarding SEB;
(3) In not finding medical expenses incurred after December 1991 were reasonable and necessary; and,
(4) In not awarding penalties and attorney's fees.

LAW
La.R.S. 23:1221(1)(c) provides in pertinent part:
... [C]ompensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
Although procedural rules are liberally construed in favor of a claimant in worker's compensation proceedings, he is still required to establish his right to recover by the necessary proof. The hearing officer found that plaintiff had failed to carry his burden of proof that he was temporarily and totally disabled after June 11, 1991.
It is well settled that the standard of review of a hearing officer's conclusions is the manifest error/clearly wrong standard. Chevalier v. L.H. Bossier, Inc., 617 So.2d 1278 (La.App. 3rd Cir.1993); Woods v. Borden's Perkins Division, 610 So.2d 219 (La. App. 3rd Cir.1992). That standard of review is set forth by our Supreme Court in Rosell v. ESCO, 549 So.2d 840 (La.1989), and Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880 (La.1993). Examining the record in light of these principles, we find no clear error in the hearing officer's conclusion that plaintiff failed to prove he was temporarily and totally disabled after June 11, 1991. All of the medical evidence supports the conclusion that as of the latter date plaintiff was, at the very least, capable of performing light to medium duty work.
We next consider appellant's alternate contention that following June 11, 1991 he was entitled to payment of supplemental earnings benefits (SEB).
An injured employee seeking SEB bears the burden of proving by a preponderance of the evidence that, as a result of a work-related injury, he/she is unable to earn 90% or more of wages received at the time of injury. Once the employee establishes this fact by a prima facie showing the burden shifts to the employer to establish that the employee is physically capable of performing a type of work which has been offered to him or which is available in his or the employer's community or reasonable geographic region. La.R.S. 23:1221(3); Paul v. Gipson, 614 So.2d 1275 (La.App. 2d Cir.1993); Hinton v. Scott Hydraulics, Inc., 614 So.2d 820 (La. App. 2d Cir.1993), writ denied, 618 So.2d 413 (La.1993).
In this case plaintiff established that he has not worked since his injury on March 30, 1990. At the time compensation payments were terminated plaintiff was still receiving active treatment from Dr. Daniel Hodges. In his report of June 4, 1991, Dr. Hodges did not release plaintiff to return to his former employment but rather suggested that he might be capable of returning to light to medium duty activity following involvement of rehab personnel in such effort. Additionally, the FCE performed May 28 and 29, 1991 corroborated Dr. Hodges' opinion that *1182 plaintiff was not physically capable of performing his former work. In our view, this uncontradicted showing was sufficient to shift the burden of proof to plaintiff's employer.
In this latter connection, appellee contends that Glenn Hebert's job search identified numerous jobs available to claimant in the area which would pay him at least 90% of his former salary and whose physical demands were well within the limits established by his FCE and his physician. However, this job search was not done until August 1991, two months after the termination of benefits and, as we read the record and report, consisted of nothing more than a list of light to medium work job openings in the area. Simply presenting a list of job openings in the area does not meet the burden imposed on an employer who seeks to avoid payment of SEB.
In Daigle v. Sherwin-Williams Company, 545 So.2d 1005 (La.1989), our Supreme Court, in addressing the burden placed upon an employer who is seeking to avoid payment of SEB, explained thusly:
Once the plaintiff has met his initial burden of proving entitlement to supplemental earnings benefits by establishing his job-related disability, ... the employer... bears the burden of proving that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region.
Sherwin-Williams, in order to prove that a job was available to Daigle, procured the services of a vocational rehabilitation expert. This expert interviewed Daigle as well as spoke with his doctor in order to best evaluate Daigle's job capabilities. After his initial analysis, the expert contacted potential employers. He ultimately found four particular jobs appropriate for a person with Daigle's experience, qualifications, and medical limitation. * * * The expert testified that he contacted the various potential employers and was told by them that each of the jobs was available and that the employers would consider hiring Daigle notwithstanding his physical restrictions. (Emphasis ours)
The record in this case is devoid of any evidence that Glenn Hebert contacted any of the employers to determine if they would, indeed, consider hiring claimant notwithstanding his physical restrictions and the fact he had not been released by his physician to return to work. Thus, we find L & L did not meet the burden imposed upon it to avoid payment of SEB. See also Romero v. Grey Wolf Drilling Company, 594 So.2d 1008 (La. App. 3rd Cir.1992), and Captain v. Sonnier Timber Company, 503 So.2d 689 (La.App. 3rd Cir.1987). Accordingly, we find claimant should have been paid SEB beginning June 11, 1991 and the hearing officer clearly erred in concluding otherwise.
As to unpaid medical expenses, this court, in Chevalier v. L.H. Bossier, Inc., supra, stated:
Diagnostic tests which treating or consulting physicians deem necessary in order to make a definitive diagnosis or recommendation for treatment are part of the necessary medical treatment which the employer and its insurer are obligated to furnish to injured workers. Stelly v. United Parcel Service, 600 So.2d 156 (La.App. 3rd Cir.1992); LeDoux v. Robinson, 568 So.2d 244 (La.App. 3rd Cir.1990).
It goes without saying that the test or tests must be related to the job injury.
With the foregoing in mind, we find it was clear error to deny payment to Dr. Rivet for his services and for the diagnostic tests he ordered, notwithstanding the finding of the OWC utilization review. On July 9, 1992, an OWC Utilization Review determined no further tests were warranted. Belaire's complaints of neck pain predated both his referral (and, in fact, were the basis for the referral) to Dr. Rivet and his February 1992 vehicular accident. Additionally, Dr. Rivet, when he first suggested Belaire have a repeat of the myelogram and CAT scan in December 1991 gave a very reasonable (and medically conservative) reason for thisthe former studies were over 13 months old. Plus, Dr. Rivet's treatment and the tests he ordered appear reasonably related to claimant's on-the-job injury.
*1183 We, however, cannot say the same of the treatment rendered and tests ordered by Dr. Cobb. Claimant did not consult Dr. Cobb until one month after his vehicular accident and, then, by his own admission, only because he had not gotten relief for his vehicular accident symptoms from treatment by Dr. Heinin. Dr. Heinin was neither deposed nor did he testify and his records were not made part of the record. Furthermore, because of the passage of time since plaintiff's on-the-job injury and the intervening accident, Dr. Cobb could only speculate as to the possibility of his services and tests being necessitated by the March 30, 1990 accident. Accordingly, we find no clear error in the denial of that portion of plaintiff's claim.
Turning now to the issue of penalties and attorney's fees, in Bradley v. Justiss Oil Company, Inc., 618 So.2d 646 (La.App. 2d Cir.1993), our brethren of the Second Circuit explained:
The determination of whether an employer should be cast with penalties and attorney fees is essentially a question of fact and the trial court's finding shall not be disturbed on appeal absent manifest error. McKenzie v. City of Bossier City, 585 So.2d 1229 (La.App. 2d Cir.1991); Jim Walter Homes v. Lewis, 544 So.2d 485 (La.App. 2d Cir.1989).
Whether reduction or termination of workers' compensation benefits is without probable cause so as to render the employer liable for attorney fees and penalties depends primarily on facts known by the employer at the time of its action. When a reduction or termination is based on legitimate disputes as to extent or cause of claimant's disability, penalties and attorney fees will not be awarded. Lynn v. Berg Mechanical, Inc., 582 So.2d 902 (La.App. 2d Cir.1991); Ross v. St. Paul Fire & Marine Ins. Co. [556 So.2d 891 (La.App. 2d Cir.1990)], supra; Jim Walter Homes v. Lewis, supra. A workers' compensation claim is "reasonably controverted," precluding imposition of penalties and attorney fees, if the employer had sufficient factual and medical information upon which to base a decision to reduce or terminate benefits. McKenzie v. City of Bossier City, supra; Myers v. Stone Container, Inc., 556 So.2d 202 (La.App. 2d Cir.1990), writ denied, 560 So.2d 30 (La. 1990).
See also Guillory v. City of Lake Charles, 614 So.2d 165 (La.App. 3rd Cir.1993), writ denied, 616 So.2d 700 (La.1993).
In the case at bar, the employer, at the time it decided to terminate claimant's benefits, had before it opinions from Drs. Hargroder, Butaud and Gidman stating plaintiff could return to full duties at his former job. Additionally, there was the December 1990 discharge note from Dr. Domingue which stated he found no evidence of neurological dysfunction. We find the foregoing more than sufficient to raise a dispute as to the extent of claimant's disability. Accordingly, we find no error by the OWC hearing officer in denying penalties and attorney's fees.
Therefore, for the reasons stated above, we affirm the finding by the hearing officer that claimant failed to prove he was temporarily and totally disabled past June 11, 1991. However, we amend the judgment to award claimant, Ricky Belaire, SEB beginning on that date plus interest on all past due payments from the date they were due until paid. Further, we order defendant, L & L Oil Company to pay Dr. Rivet for all services he rendered through the date of trial and to pay all expenses of any diagnostic tests he ordered and which remain unpaid. We deny claimant's request for payment of Dr. Cobb's treatment and for the tests he initiated. We further deny claimant's request for penalties and attorney's fees. All costs of this appeal are assessed against defendant, L & L Oil Company.
AFFIRMED AS AMENDED.