JiDECUIR, Judge.
This is an appeal by United States Fidelity & Guaranty Company (USF & G) and Southern Industrial Contractors from the judgment of the hearing officer for the Office of Worker’s Compensation awarding Gerald Dufrene supplemental earnings benefits, a minimum of twenty-six (26) weeks of vocational rehabilitation during which time plaintiff is to receive temporary total disability benefits, and attorney’s fees in the amount of $6000.00. Appellants contend that the hearing officer erred: (1) in finding that plaintiff returned to work after termination of benefits in a “modified position”; (2) in finding that plaintiff proved he was “physically unable” to earn 90% of his pre-accident wage; (3) in finding that plaintiff is entitled to vocational rehabilitation; and (4) in assessing penalties and attorney’s fees.
After trial on the merits on August 24, 1994, the hearing officer found that Mr. ^Dufrene met the burden of proof for entitlement to supplemental earnings benefits for the period from termination of temporary total disability benefits on September 15, 1993, until October 1993, when plaintiff returned to work as a pipefitter. The hearing officer concluded that plaintiff returned to work to provide for his family after benefits were terminated, and that Mr. Dufrene returned to his former employment as a pipe-fitter in a modified position because he worked in pain and was given lighter duties. The hearing officer further found that over a period of time plaintiff was unable to perform even the modified duties of his employment, and as such, is entitled to a minimum of 26 weeks of meaningful vocational rehabilitation, during which time he is entitled to temporary total disability benefits. Additionally, the hearing officer found Mr. Dufrene was able to earn an amount equal to or more than ninety (90%) percent of his pre-injury wage over certain periods of time, but that plaintiff is entitled to supplemental earnings benefits for the relevant periods wherein he was unable to earn ninety (90%) percent or more of his pre-injury wage. Finally, the hearing officer awarded penalties and attorney’s fees because defendants terminated temporary total disability benefits instead of reducing the benefits to supplemental earnings benefits. Because we find the hearing officer’s judgment to be manifestly erroneous, we reverse.
FACTS
Mr. Dufrene was injured during the course and scope of his employment as a pipefitter with Southern Industrial Contractors, Inc. on July 1, 1992. Plaintiff sustained a herniated disc injury when he tripped and fell over scrap iron laying on the floor behind him. He underwent surgery by Dr. Carl Goodman, orthopedic surgeon, in January 1993. At the time of the accident, Mr. Dufrene was earning $13.50 per hour and an average weekly wage of $727.32. Compensation benefits I swere paid until September 15, 1993. Defendants contend benefits were terminated based upon Dr. Goodman’s approval of a job description submitted to him in August of 1993 by Marcie Heine, vocational rehabilita-tionist.
Contrary to the hearing officer’s findings, the record reflects that the events leading to the termination of benefits in September 1993 were initiated by Mr. Dufrene. Ms. Heine testified that in August of 1993, Mr. Dufrene contacted her requesting that she help him obtain a release to return to work. Ms. Heine testified that plaintiff was eager to return to pipefitting work and that he did not want to have to return to see Dr. Goodman. Ms. Heine’s testimony in this respect is un-contradicted. Mr. Dufrene did not dispute *292 this testimony, but testified only that he could not recall when this conversation with Ms. Heine took place. Ms. Heine submitted a job description for pipefitter from International Paper to Dr. Goodman with a release to return to work. Dr. Goodman approved the job, signed the release, and benefits were terminated. Plaintiff makes much of the fact that the job description submitted to Dr. Goodman is erroneous in that the job description indicated that a pipefitter would be required to lift no more than 50 pounds, when the job actually requires that a pipefit-ter lift much more weight. Dr. Goodman restricted plaintiff to lifting no more than 50 pounds. Plaintiff testified he was aware of this restriction, and having worked as a pipe-fitter for several years prior to his accident, was aware of the physical requirements of a pipefitter.
Mr. Dufrene returned to work as a pipefit-ter in October 1993, and thereafter continued to work as a pipefitter on several jobs. We note from plaintiffs own testimony that, except for one job with U.S. Contractors in Texas, each job he held after termination of benefits ended due to a reduction in force because the job was completed, not because he was physically unable to perform the work. Plaintiff | testified he was released from employment with U.S. Contractors when his previous back injury was discovered. Again, plaintiff did not testify that he was laid off from the job with U.S. Contractors because he was unable to perform the work.
There is no dispute that Mr. Dufrene earned ninety (90%) or more of his pre-accident wage during the times he was employed after termination of benefits. After benefits were terminated, Mr. Dufrene worked for Optimized Process Designs (OPD) as a pipefitter and on occasion performed instrumentation work (lighter duty than pipefitter) at $12.50 per hour. He consistently earned overtime wages while working for OPD. Mr. Dufrene was laid off on January 19, 1994, when the job on which he was working ended. Plaintiff next went to work for U.S. Contractors for a four-day period. Plaintiff was then employed as a pipefitter by Dickson GMP International, Inc., from February 23, 1994, through April 20,1994, at $12 per hour plus time and a half for overtime. The record reflects that plaintiff consistently received overtime pay while working for Dickson and was laid off due to reduction in force. Plaintiff was then rehired by OPD on April 21, 1994, at $13 per hour and worked through July 6, 1994, when the job was completed just one month prior to trial.
A review of the medical evidence reflects that on February 26, 1993, Dr. Goodman reported that Mr. Dufrene, who was now six weeks post-op and doing well, had no significant problems, but did have some mild low back pain with activity. At that time, Dr. Goodman released him to return to work with a lifting limit of 50 pounds. On April 12,1993, a functional capacity evaluation was performed. James Peak, physical therapist, reported to Dr. Goodman that it was his impression based upon this evaluation that plaintiff had not quite completed the healing process, still had a moderate degree of lumbar extension dysfunction and a tendency toward very |5minimal recurrent derangement type symptoms. It was Mr. Peak’s opinion that Mr. Dufrene had an excellent potential to return to his previous line of work after completion of a work-hardening program of 4 to 6 weeks duration. Dr. Goodman’s records of April 14, 1993, indicate Dr. Goodman’s agreement with Mr. Peak’s assessment and recommendations and a prescription for the work-hardening program. On August 23, 1993, Dr. Goodman discussed job capabilities with Mr. Dufrene. Dr. Goodman indicates in his report of this date that Mr. Dufrene could not perform the work of a pipefitter^ but that the plaintiff wanted to work as a heavy equipment operator and he was of the opinion that plaintiff could do that type of work. Thereafter, in September 1993, Dr. Goodman approved the job description of welder pipefitter at International Paper. The last time plaintiff was seen by Dr. Goodman was one year prior to trial. Dr. Goodman testified in his deposition taken the day before trial that he would expect plaintiffs condition to have improved somewhat since the last time he saw him a year prior to his deposition.
*293 The record indicates that prior to his employment with Dickson, Mr. Dufrene informed Dickson personnel of his prior back injury and surgery. Dickson referred plaintiff for a pre-employment physical by Dr. Joseph Serio. Dr. Serio obtained a history of plaintiffs prior back injury and surgery. According to Dr. Serio, plaintiff informed him that he was not having any back pain or problems from his previous surgery. Testing was performed, and Dr. Serio released plaintiff to work. Plaintiff thereafter informed Dickson personnel that he was released to return to work.
LAW
An injured employee seeking supplemental earnings benefits must prove by a preponderance of the evidence that as a result of the work-related injury, he is unable to earn ninety percent or more of wages earned at the time of his injury. The next | f,step in the analysis is to determine what the claimant is earning or is able to earn. La. R.S. 23:1221(3)(c)(i); Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989); McClinton v. Rapides General Hosp., 93-1295 (La.App. 3 Cir. 5/4/94); 640 So.2d 534, twit denied 94-1438 (La. 9/23/94); 642 So.2d 1290. Although procedural rules are to be liberally construed in favor of a claimant in worker’s compensation cases, he is still required to establish his right to recover by the necessary proof. Belaire v. L & L Oil Co., 93-1198 (La.App. 3 Cir. 5/4/94); 636 So.2d 1177.
Even though plaintiff offered absolutely no proof of his inability to earn ninety percent or more of his pre-accident wages, the hearing officer awarded SEB from the termination of benefits until October 1993 when plaintiff returned to work. The hearing officer apparently also awarded SEB benefits for those time periods when plaintiff was laid off from his employment. The hearing officer apparently relied upon Dr. Goodman’s work restrictions that plaintiff could not work as a pipefitter and testimony that plaintiffs father and others on the job “took up his slack”, in reaching her findings. However, despite Dr. Goodman’s restrictions, plaintiff continued to work and earn wages as a pipefitter. The only time plaintiff was not so employed was because he was laid off due to completion of a job. Furthermore, Dr. Goodman released plaintiff to work as a pipe-fitter helper and a heavy equipment operator. Plaintiff offered no evidence to show that he could not earn ninety percent or more of his pre-accident wages in these alternate occupations.
Applying the manifest error standard applicable in worker’s compensation cases, we reverse the hearing officer’s award of SEB. Having found that plaintiff is not entitled to SEB, we also reverse the award of penalties and attorney’s fees.
The hearing officer’s award as to vocational rehabilitation and temporary total disability benefits during that time is also reversed in light of the fact that plaintiff |7offered no evidence that his injury prevented him from earning wages equal to wages earned prior to his injury. Mr. Dufrene continued to work as a pipefitter and also performed lighter duty instrumentation work after termination of benefits. Additionally, Dr. Goodman approved a pipefitter helper position and heavy equipment operator position. No evidence was adduced at trial as to wages for these alternate occupations. La. R.S. 23:1226(A).
Costs of appeal are assessed to plaintiff.
REVERSED.