# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-783


TIM WEAVER

VERSUS

SOUTHERN ERECTORS, INC. OF FLORIDA


************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 2
PARISH OF NATCHITOCHES, NO. 08-20679
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

************

DAVID E. CHATELAIN*
JUDGE

************

Court composed of Jimmie C. Peters, James T. Genovese, and David E. Chatelain, Judges.


**AMENDED, AFFIRMED AS AMENDED, AND RENDERED.**

**Richard E. King**
**Jennifer L. Simmons**
**Jeffrey P. Green**
**Galloway, Johnson, Tompkins,**
**Burr & Smith**
**701 Poydras Street, 40th Floor**
**New Orleans, Louisiana 70139**
**(504) 525-6802**
**Counsel for Defendants/Appellants:**
  **The Hartford Insurance Company**
  **Southern Erectors, Inc. of Florida**

---

*Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**Gregory J. Hubachek**
**Attorney at Law**
**242B Keyser Avenue, PMB #105**
**Natchitoches, Louisiana  71457**
**(504) 838-8883**
**Counsel for Plaintiff/Appellee:**
       **Tim Weaver**

**CHATELAIN, Judge.**

The defendants, Southern Erectors, Inc. of Florida (Southern) and its workers' compensation insurer, The Hartford Insurance Company (The Hartford), appeal a judgment the workers' compensation judge (WCJ) rendered in favor of its former employee, Timothy Weaver (Weaver), finding that he was injured in a work-related accident and awarding him workers' compensation benefits, along with penalties and attorney fees. Weaver answers the appeal seeking multiple penalties, attorney fees for work done on appeal, and costs. For the following reasons, we amend to award additional penalties, award attorney fees for appellate representation, and affirm.

### FACTS AND PROCEDURAL HISTORY

On August 25, 2008, Weaver filed a 1008 Disputed Claim for Compensation against Southern seeking benefits and medical treatment pursuant to the Louisiana Workers' Compensation Act, La.R.S. 23:1021-1415, for injuries that he sustained in a workplace accident on August 13, 2008.[1] Weaver further sought an award of statutory penalties and attorney fees. In answering Weaver's claim, Southern admitted that he was in the course and scope of his employment with Southern at the time of the alleged accident and injury but denied that he was disabled and entitled to indemnity benefits. In addition, Southern denied any liability for penalties and attorney fees, contending that it had "reasonably investigated and handled" Weaver's claim.[2]

---

[1] Weaver amended his disputed claim on December 4, 2009, to include The Hartford as a party defendant.

[2] The defendants twice amended their answer, first, to plead the affirmative defense of intoxication pursuant to La.R.S. 23:1081, and later, to affirmatively plead that Weaver had "advanced this claim with fraudulent intent and misrepresentations for the purpose of obtaining benefits" thereby subjecting him to the penalties of La.R.S. 23:1208. Nevertheless, the defendants neither presented evidence nor argument in support of these affirmative defenses at trial, and the WCJ denied the defenses in the judgment now being appealed. The defendants advance no argument

1

The matter was originally set for trial on July 7, 2009; however, Weaver filed an unopposed motion to continue the trial in order for him to complete necessary diagnostic testing that his treating physician recommended. Weaver attached to the motion correspondence from his attorney to Southern's attorney documenting the fact that Southern's workers' compensation insurer had pre-authorized the tests referenced in the motion and that Southern had agreed to unconditionally tender twelve weeks of temporary total disability benefits (TTDs) to Weaver.

The matter was tried on December 9, 2009. Weaver offered twelve exhibits, including the medical bills that he incurred as a result of the accident and the deposition of Dr. Pierce Nunley, his treating orthopedist. The defendants offered ten exhibits, including the deposition of Lee Tillman, Weaver's supervisor at the time of the accident, as well as the deposition of Dr. Gordon Mead, an orthopedist who performed an independent medical examination (IME) on Weaver at Southern's request. All of the exhibits were admitted into evidence without objection. Weaver was the only witness to testify live. At the close of trial, the WCJ took the matter under advisement and requested that the parties file post-trial briefs.

Oral reasons for judgment were read into the record on March 22, 2010, and a written judgment in accordance therewith was signed on March 29, 2010. The WCJ determined that Weaver sustained personal injuries that were caused by the workplace accident that occurred on August 13, 2008. He found that Weaver had satisfied his burden of proving that he was entitled to TTDs from August 15, 2008 through June 30, 2009 and that he was entitled to supplemental earnings benefits (SEBs) from July 1, 2009. In addition, the WCJ found that Weaver had satisfied his burden of

on these issues in this court. Accordingly, these issues are not now before us.

2

proving that he was entitled to TTDs from September 1, 2009 through the present and continuing thereafter. He further found that Weaver had satisfied his burden of proving that he was entitled to payment of any unpaid claims for workers' compensation medical benefits, without any discount, for treatment rendered to him by Dr. Gary Swart, Dr. Gregory Bell, and Dr. Nunley. The WCJ ruled that the defendants were entitled to a credit for the weeks of TTDs that had already been paid to Weaver and for any medical benefits that had been paid to any of Weaver's healthcare providers. Two penalties were assessed against the defendants under La.R.S. 23:2101(F) in the amount of $2,000 each; one for failure to tender payment of indemnity benefits and one for failure to tender payment of medical benefits. Weaver was awarded $7,500 in attorney fees pursuant to La.R.S. 23:1201(F). Finally, the defendants were assessed all costs associated with the matter.

The defendants are now before this court asserting two errors. First, they contend that the WCJ erred in finding that Weaver was injured in a workplace accident and, thus, entitled to workers' compensation benefits. Next, they contend that the WCJ erred in awarding Weaver penalties and attorney fees because they had articulable and objective reasons for denying his claim. Weaver answers the appeal requesting that this court amend the judgment to assess multiple penalties against the defendants and that this court award him additional attorney fees and costs for having to defend this appeal.

## DISCUSSION

A worker bringing a compensation action against his employer bears the burden of proving, as a threshold requirement, that he suffered "'personal injury by *accident* arising out of and in the course of his employment.' [La.]R.S.

3

23:1031[(A)]." *Bruno v. Harbert Int'l Inc.*, 593 So.2d 357, 360 (La.1992). The word "accident" as used in La.R.S. 23:1031 is defined as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La.R.S. 23:1021(1).

In *Bruno*, 593 So.2d at 360-61 (citations omitted), the Louisiana Supreme Court noted that, while "Louisiana courts view the question of whether there was an accident from the worker's perspective[,] . . . the worker's burden of proof is not relaxed. Rather, as in other civil actions, the plaintiff-worker in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence." Regarding the claimant's burden of proof, the *Bruno* court went on to state, "[a] worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident." *Id.* at 361. In addition, this court has held that the mere existence of a pre-existing condition alone does not foreclose the receipt of workers' compensation benefits where there is evidence that the on-the-job accident aggravated and accelerated the claimant's pre-existing condition. *Bush v. Avoyelles Progress Action Comm.*, 07-685 (La.App. 3 Cir. 10/31/07), 970 So.2d 63.

This court discussed the standard of review employed in workers' compensation cases in *Foster v. Rabalais Masonry, Inc.*, 01-1394, pp. 2-3 (La.App.

4

3 Cir. 3/6/02), 811 So.2d 1160, 1162, *writ denied,* 02-1164 (La. 6/14/02), 818 So.2d 784:

> Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. *Smith v. Louisiana Dep't of Corrections,* 93-1305 (La.2/28/94); 633 So.2d 129. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Stobart v. State,* 617 So.2d 880 (La.1993). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. *Id.* Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.,* 558 So.2d 1106, 1112 (La.1990).

"The determination of coverage is a subjective one in that each case must be decided from all of its particular facts." *Jackson v. Am. Ins. Co.*, 404 So.2d 218, 220 (La.1981). This court has held that, in light of that standard of review, "great deference is accorded to the [workers' compensation judge's] factual findings and reasonable evaluations of credibility." *Cent. Lumber Co. v. Duhon*, 03-620, p. 3 (La.App. 3 Cir. 11/12/03), 860 So.2d 591, 593, *writ denied*, 04-315 (La. 4/2/04), 869 So.2d 880 (alteration in original) (quoting *Garner v. Sheats & Frazier*, 95-39, p. 7 (La.App. 3 Cir. 7/5/95), 663 So.2d 57, 61).

### Did an injury producing on-the-job accident occur?

The defendants stipulated at trial that Weaver was employed by Southern and was in the course and scope of his employment when the alleged workplace accident occurred. Nevertheless, they maintain that Weaver did not suffer any compensable injuries in that accident. While they acknowledge that a worker's testimony alone can be enough to discharge his burden of proof, the defendants argue that Weaver's testimony lacked credibility, that Weaver has a history of physical altercations which

5

makes it "conceivable that Weaver actually suffered an injury some time after the alleged workplace accident," and that no evidence was offered to corroborate Weaver's story. Weaver counters that the evidence submitted at trial conclusively proved that he was injured in the workplace accident that occurred on August 13, 2008, that he reported his injuries to his employer soon after the accident, that he sought medical treatment for those injuries within days of the accident, and that the medical evidence supports his claim that he continues to suffer from a disabling condition, thus, entitling him to workers' compensation benefits.

In his 1008 claim, Weaver alleged that he injured his neck, elbows, and shoulder when a man lift that he was in was "struck by a heavy part of a precipitator."[3] At trial, Weaver testified that on the morning of August 13, 2008, he was helping to move a section of flooring for a precipitator. He was in the basket of a man lift, which was extended approximately eighty feet into the air and under the load. The section of flooring measured sixty feet by forty feet, and it was two feet thick. It was made of solid steel and weighed approximately sixteen and one-half tons. He was helping to guide the section of flooring into place to be attached between two walls, with about one-half inch room for error on either side. Weaver explained that because the solid floor blocked their view of each other, he and Mr. Tillman were "hollering back and forth," and Mr. Tillman was signaling the crane operator.

According to Weaver, he had just swung the basket out from under the load when the load dropped about fourteen feet, hitting the arm of the basket and springing

[3]Although the term "precipitator" was not defined at the trial of this matter, dictionary.com defines an "electrostatic precipitator" as "a device for removing small particles, as of smoke, dust, or oil, from a gas, as air, by passing the gas first through an electrically charged screen that gives a charge to the particles, then between two charged plates where the particles are attracted to one surface."

him up in the air and back down again. Although he was wearing a sixty-five pound tool belt and had braced himself when he saw the load dropping, he nonetheless sprung up and his harness was all that stopped him from being thrown out of the basket. He opined that he would have been killed if the accident had happened ten seconds earlier.

Weaver testified that Terry Hollister, a co-worker, was severely hurt in the accident and that everyone had focused their attention on assisting him. He explained that after the crane operator had re-secured the load, they noticed that Mr. Hollister was hanging from his harness and had passed out. After Mr. Hollister was rescued and taken away by ambulance, operations ceased for the day, and everyone involved was interviewed regarding the accident. According to Weaver, he did not mention that the man lift had been struck by the falling load or that the falling load jarred him around because "Terry's the only one we w[ere] worried about at the time."

Weaver stated that the fact that the crane had struck the man lift was brought to "the attention of everybody," including his supervisor, Mr. Tillman, on either the day of the accident or the following day and that the man lift had been inspected on one of those two days. There were heavy scrapes on the man lift where the load had struck it.[4] Weaver admitted, however, that the damage to the man lift had not prevented him from operating it.

According to Weaver, the job was still shut down when he reported to work the day after the accident. He did not report to work from August 15 to August 18 because his right arm had begun to bruise and had swollen to twice its normal size and was causing him pain. He explained that he had not sought medical attention at

_____

[4]Weaver explained that the man lift had some shiny scrapes that he assumed were freshly made because they were not rusted.

7

that time because he thought that "it would go away." When he did return to work on August 19, 2008, he immediately reported his injury to the safety man of the entire work site as well as to Mr. Tillman. Weaver was told that he had to take a drug test before they would schedule him to see a doctor or contact the workers' compensation insurer. He refused to take the drug test because he had taken a Lortab that his mother had given him for pain, and he did not want a failed drug test in his employment record. At that point, Southern terminated him.

Weaver first sought treatment from Dr. Swart, a chiropractor, on August 28, 2008. Weaver explained that Dr. Swart "wouldn't touch me" and instead referred him to his family physician, Dr. Bell, for evaluation and treatment. Later that day, Dr. Bell's nurse practitioner saw him, and he was given a referral to see an orthopedist. Weaver explained that when "they" refused to pay for an orthopedic consult, he returned to Dr. Bell four or five more times. Dr. Bell wrote him a few prescriptions for pain pills but told him that he needed to see an orthopedist to "fix the problem" because he (Dr. Bell) did not want to just "feed [him] pain pills." Weaver eventually saw Dr. Nunley, an orthopedist, on April 8, 2009, and was told that he could not continue to do the kind of work that he had been doing. Dr. Nunley had explained that he had "knots on the two discs in [his] neck and that he[, Dr. Nunley,] was going to give [him] some type of nerve shot" but that if that did not work, he would need surgery. Weaver was also seen by Dr. Mead at Southern's request.

In *Guilbeaux v. Martin Mills, Inc.*, 93-1359 (La.App. 3 Cir. 5/4/94), 640 So.2d 472, *writ denied*, 94-1444 (La. 9/23/94), 642 So.2d 1291, the claimant felt a sharp pain while cutting fabric at her job. Although she immediately reported her

8

discomfort to her instructor and several coworkers, she continued to work and did not inform her employer that she suffered a work-related accident until approximately three months after the incident when her doctor told her that the work-related incident was the source of her injury. In reversing the WCJ's finding that Guilbeaux had not suffered a work-related accident, we stated that the claimant "should not be barred from recovery because she did not realize or diagnose the full extent of her injury immediately after it happened. Nor should she or any other worker be penalized for trying to work as much as he or she can, despite the pain." *Id.* at 476. *See also Wackenhut Corr. Corp. v. Bradley*, 96-796 (La.App. 3 Cir. 12/26/96), 685 So.2d 661.

In his oral reasons for judgment, the WCJ in the present case noted that "there certainly was not a calm situation facing everyone there, particularly with the injury of the other individual in question[;] . . . they were scrambling around to get the man lift that Mr. Weaver was operating to rescue the other injured worker, and this was accomplished." The WCJ further noted that the deposition of Mr. Tillman corroborated Weaver's testimony that either on the day of or the day after the accident he had reported that the man lift had been hit. Mr. Tillman's deposition also confirmed that when Weaver returned to work on the Tuesday following the accident, after having missed several days of work, he reported his injury and complaints of pain to Mr. Tillman and the safety people.

The WCJ found that the records from Weaver's August 28, 2008 visit to Dr. Swart's office corroborated Weaver's testimony of how the accident occurred as well as Weaver's testimony that he initially thought that he was not seriously injured and that his pain would resolve on its own. Dr. Swart's examination of Weaver revealed that he had bruising and epicondylitis, or inflammation, of his right elbow

9

and that he had complaints regarding his upper extremities. Dr. Swart recommended that Weaver see Dr. Bell and an orthopedist and that he be tested to rule out cervical disc involvement.

The WCJ found that the records from Weaver's August 28, 2008 visit to Dr. Bell's office indicated that Weaver gave a history of the accident that was consistent with how Weaver testified at trial. The WCJ made a similar finding with regard to the history that Weaver gave to Dr. Nunley on April 8, 2009.

The WCJ meticulously detailed Weaver's medical records. He stated that Dr. Nunley noted that the X-rays showed that Weaver had multilevel spondylosis, instability at C5-6, and mild movement at C6-7. Dr. Nunley had diagnosed Weaver with neck pain, cervical spondylosis, and cervical radiculopathy, and he opined that Weaver might at some point be a candidate for cervical surgery. Further, Dr. Nunley found that Weaver continued to have complaints and that Weaver remained disabled from doing the heavy type of work that he had performed at Southern. The WCJ noted that according to Dr. Nunley and the radiologist who read the report of Weaver's July 6, 2009 MRI, the test revealed that his C3-4 "contained a disc herniation with bilateral neural foraminal narrowing, which means that the . . . C4 nerve root [] was being constrained somewhat as it was exiting the spine." The MRI also revealed that Weaver had "a fairly large central disc herniation" at C4-5 and C5-6 and some mild narrowing where the C6 nerve root exits the spine. The WCJ opined that the aforementioned objective findings corroborated the complaints Weaver expressed. Nonetheless, the WCJ noted that Dr. Mead opined that Weaver suffered only straining injuries to his cervical area that he would have expected to resolve within six to twelve weeks.

10

The WCJ accurately stated the law pertaining to this matter, including the *Bruno* test for determining whether a worker's testimony alone is enough to satisfy his burden of proof. *See Bruno*, 593 So.2d 357. Thereafter, the WCJ found that Southern did not present any evidence that would cast serious doubt on Weaver's explanation of the events of August 13, 2008. The WCJ further found that Weaver had been consistent in his description of the accident to all of the physicians who examined him and that the medical records corroborated Weaver's complaints. In addition, the WCJ found that Mr. Tillman's deposition confirmed that Weaver had told him that the falling precipitator struck his man lift.

With regard to the defendants' contention that Weaver lacked credibility because he had been less than truthful about the injuries he suffered in a December 2006 fight and a February 2008 vehicle rollover accident, the WCJ found that none of Weaver's previous medical records indicated that he had ever had any cervical problems, although he may have had some degenerative disc disease that pre-existed the subject accident. On the other hand, the medical records reflected that Weaver had consistently complained of neck pain since the August 13, 2008 accident. Moreover, the WCJ specifically stated he was giving more weight to the medical records from Drs. Swart, Bell, and Nunley than those of Dr. Mead. Accordingly, the WCJ determined that Weaver "clearly established that his cervical condition is the result of his lift being jerked around, certainly by the fright he occasioned when this huge object was coming his way."

The WCJ likened this matter to this court's earlier decision in *Rivers v. Bo Ezernack Hauling Contractor, Inc.*, 09-991 (La.App. 3 Cir. 3/10/10), 32 So.3d 1091, *writ denied,* 10-807 (La. 6/4/10), 38 So.3d 309, wherein we reiterated the principle

11

that a worker's pre-existing condition does not bar his recovery because the employer takes its employee as it finds him.

The WCJ addressed and soundly rejected the arguments that the defendants make on appeal. We have carefully reviewed the record in its entirety, and we are convinced that the WCJ did not err in finding that Weaver proved that he was injured in the August 13, 2008 accident and that he is entitled to receive workers' compensation benefits. Therefore, we find that the defendants' first assignment of error lacks merit.

### Penalties and Attorney Fees

The defendants contend that the WCJ erred in awarding Weaver penalties and attorney fees because they had articulable and objective reasons for denying his claim. On the other hand, Weaver requests that this court not only affirm the WCJ's award of penalties and attorney fees but also amend the judgment to assess multiple penalties against the defendants. In addition, Weaver requests that this court award him additional attorney fees for work done on this appeal.

The statute governing payment of benefits, La.R.S. 23:1201, also provides for penalties and attorney fees under certain circumstances. The applicable provisions regarding payment of benefits state:

> B. The first installment of compensation payable for temporary total disability, permanent total disability, or death shall become due on the fourteenth day after the employer or insurer has knowledge of the injury or death, on which date all such compensation then due shall be paid.
>
> . . . .
>
> E. Medical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof.

12

La.R.S. 23:1201(B) and (E).

Furthermore, La.R.S. 23:1201(F) provides, in pertinent part:

> Failure to provide payment in accordance with this Section . . . shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. . . .
>
> . . . .
>
> (2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.

A claim for benefits has been reasonably controverted when the employer "engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed." *Brown v. Texas-LA Cartage, Inc.*, 98-1063, p. 9 (La. 12/1/98), 721 So.2d 885, 890. The decision to impose penalties and attorney fees is essentially a factual issue subject to the manifest error or clearly wrong standard of review. *Authement v. Shappert Eng'g*, 02-1631 (La. 2/25/03), 840 So.2d 1181.

The WCJ concluded that Southern "was arbitrary and capricious and at least unreasonable in the denial of Mr. Weaver's claim." In his oral reasons for judgment, the WCJ examined the evidence of the defendants' actions and reasoned:

> They had before them the knowledge, the factual knowledge that on August 13th of 2008, this heavy precipitator fell and fell a great distance, they knew Mr. Weaver was working around the precipitator and he was in a man lift. Mr. Tillman confirmed that shortly thereafter on that day

13

or the very next day, he was informed by Mr. Weaver that the object struck the man lift. The[y] inspected the man lift, they found the scratch on the man lift, they had all the medical – they had the past medical records from the rollover accident and Mr. Weaver being punched in the face, and none of those medical records ever disclosed to the employer that Mr. Weaver ever experienced any kind of cervical problems as a result of those incidents having taken place. They had no medical information to dispute Mr. Weaver's claim that his neck and cervical problems were related to the incident of [August] 13th of 2008. At best, they gave this Court mere speculation and conjecture that, "Well, he sneezed, perhaps, and he had a degenerative disc problem already, so why couldn't a rollover and being punched in the face cause his . . . cervical problems?" Well, the reason they didn't cause him cervical problems was because he didn't complain of them and they weren't found in the medical records.

Thus, after characterizing the defendants' arguments as "mere speculation and conjecture," the WCJ awarded Weaver a $2,000 penalty for the defendants' failure to begin paying him indemnity benefits and a $2,000 penalty for the defendants' failure to provide him with medical benefits,[5] and further awarded attorney fees of $7,500. After carefully examining the WCJ's reasons and for reasons fully expressed in this opinion, we find no manifest error in the WCJ's award of penalties and attorney fees.

In his answer to this appeal, Weaver argues that he is entitled to receive additional penalties for the defendants' failure to pre-authorize an initial consultation with Weaver's choice of orthopedist, Dr. Nunley, and to timely pay for medical testing that the defendants pre-authorized when they, along with Weaver, jointly sought a trial continuance of this matter. The defendants fail to address Weaver's argument to this court. Finding merit to Weaver's requests, we award him an additional penalty of $2,000 for the failure to authorize his initial treatment with the

---

[5]The WCJ's award of penalties is vague. It appears that these two penalties were for the defendants' failure to timely commence indemnity payments, a requirement of La.R.S. 23:1201(B), and to timely pay for the initial medical bills, a requirement of La.R.S. 23:1201(E).

orthopedist, Dr. Nunley, and a separate penalty of $2,000 for the failure to timely pay for diagnostic studies the defendants pre-authorized on July 2, 2009, in conjunction with an unopposed motion to continue trial.

Finally, Weaver has answered the appeal, seeking additional attorney fees for work performed on the appellate level. After considering Weaver's request, we award Weaver $3,500 for work done on appeal.

### DECREE

For the foregoing reasons, the judgment of the WCJ is affirmed. We award two additional penalties of $2,000 each and an additional $3,500 in attorney fees for work done on appeal. All costs of this appeal are assessed to the defendants, Southern Erectors, Inc. of Florida and The Hartford Insurance Company.

**AMENDED, AFFIRMED AS AMENDED, AND RENDERED.**