# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 13-1367


## LAFAYETTE STEEL ERECTOR, INC., ET AL.

## VERSUS

## JAMES CONSTANCE


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 3
PARISH OF CALCASIEU, NO. 11-08894
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***

## PHYLLIS M. KEATY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Jimmie C. Peters, Billy Howard Ezell, and Phyllis M. Keaty, Judges.


**AFFIRMED.**

**Mark Zimmerman**
**Attorney at Law**
**4216 Lake Street**
**Lake Charles, Louisiana 70605**
**(337) 474-1644**
**Counsel for Appellee:**
 **James Constance**

**Eric J. Waltner**
**Allen & Gooch**
**Post Office Box 81129**
**Lafayette, Louisiana 70598-1129**
**(337) 291-1400**
**Counsel for Appellants:**
 **Lafayette Steel Erector, Inc.**
 **The Gray Insurance Company**

**KEATY, Judge.**

In this workers' compensation case, Appellants, the employer and its insurer, appeal from a judgment rendered by the workers' compensation judge (WCJ) in favor of claimant. For the following reasons, we affirm the judgment and award claimant additional attorney fees for work done on appeal.

## FACTS AND PROCEDURAL HISTORY

Claimant, James Constance, began working as a welding tacker for Lafayette Steel Erector, Inc. on September 21, 2009. He allegedly injured his left ankle and foot in an unwitnessed accident that occurred on October 27, 2009. He was sixty years of age at the time. Constance returned to work in a modified capacity until he was laid off on November 6, 2009. Thereafter, Lafayette Steel and its workers' compensation insurer, The Gray Insurance Company, (hereafter sometimes referred to collectively as Appellants) paid medical benefits and indemnity benefits to Constance based upon the maximum level allowed at the time of the accident, $577.00 per week. On March 23, 2010, orthopedic surgeon, Dr. Christopher Hebert, performed surgery on Constance's left foot, which consisted of a tendon transfer and reconstruction. Constance also claimed that he later injured his right shoulder in December 2010, when his left foot gave out while he was walking down stairs and had to grab the handrail to stop himself from falling. On December 2, 2012, Appellants reduced Constance's indemnity to $416.00 per week in supplemental earnings benefits (SEBs).

The matter proceeded to trial on January 15 and 31, 2013. In oral reasons for judgment rendered on May 1, 2013, the WCJ found that Constance injured his left foot and ankle in a work-related accident on October 27, 2009. Appellants'

La.R.S. 23:1208[1] defense was denied. Constance was awarded SEBs based on a zero earnings capacity from December 2, 2012, the date of the benefit reduction, forward, along with a $2,000.00 penalty for Appellants' improper reduction of benefits. The WCJ found that Constance's right shoulder injury was compensable and not prescribed and awarded him a $2,000.00 penalty for Appellants' failure to reasonably controvert that claim. Because it determined that the initial indemnity payment to Constance was untimely and not reasonably controverted, he was awarded a $1,600.00 penalty and a $500.00 attorney fee, both to be paid solely by Lafayette Steel. Additional attorney fees of $13,900.00 were assessed against Appellants, and they were ordered to pay litigation expenses totaling $1,173.62. Finally, Appellants were ordered to pay legal interest on all amounts awarded in the judgment.

Appellants now appeal, asserting that the WCJ committed legal or manifest error: 1) in denying their fraud defense; 2) in finding Constance credible; 3) in finding an accident and injury; 4) in not finding Constance's shoulder injury prescribed; 5) in finding that Constance had no wage earning capacity; 6) in holding that Constance's layoff did not eliminate his right to SEBs; 7) in assessing penalties and attorney fees against them regarding the reduction of benefits; 8) in assessing penalties and attorney fees given the significant evidence calling into question the compensability; and 9) in the quantum of attorney fees awarded. Constance answered the appeal requesting that this court uphold the judgment of the WCJ and award him additional attorney fees on appeal.

---

[1] Hereafter, this opinion will refer to La.R.S. 23:1208 as the fraud statute.

**DISCUSSION**

Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. *Smith v. Louisiana Dep't of Corrections,* 93-1305 (La.2/28/94); 633 So.2d 129. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Stobart v. State,* 617 So.2d 880 (La.1993). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. *Id.* Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.,* 558 So.2d 1106, 1112 (La.1990).

*Foster v. Rabalais Masonry, Inc.*, 01-1394, pp. 2-3 (La.App. 3 Cir. 3/6/02), 811 So.2d 1160, 1162 (alteration in original), *writ denied*, 02-1164 (La. 6/14/02), 818 So.2d 784.

The workers' compensation judge has great discretion to assign whatever weight he deems appropriate to evidence that has been admitted. *La. Workers' Comp. Corp. v. Gray,* 34,731 (La.App. 2 Cir. 5/9/01), 786 So.2d 310. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.

*Vidrine v. La-Tex Rubber & Specialties, Inc.*, 07-157, p. 4 (La.App. 3 Cir. 5/30/07), 958 So.2d 146, 149.

## *The Fraud Defense*

Louisiana Revised Statutes 23:1208(A) provides that it is "unlawful for any person, for the purpose of obtaining . . . any benefit or payment . . . to willfully make a false statement or representation." "Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter." La.R.S. 23:1208(E).

In order for there to be a forfeiture of workers' compensation benefits under La.R.S. 23:1208, the employer must prove (1) the

claimant made a false statement or representation, (2) that the statement was willfully made, and (3) the statement was made for the purpose of obtaining or defeating any benefit or payment. *Resweber v. Haroil Constr. Co.,* 94-2708, 94-3138 (La.9/5/95), 660 So.2d 7; *Babineaux v. Moss Motors,* 06-749 (La.App. 3 Cir. 12/6/06), 944 So.2d 882. However, the mere making of inadvertent or inconsequential false statements will not result in forfeiture.

*Rougeou v. St. Francis Cabrini Hosp.*, 12-854, p. 5 (La.App. 3 Cir. 2/6/13), 107 So.3d 851, 856.

Appellants assert that Constance violated the fraud statute by denying prior right-foot-nerve injuries to his doctors, by misstating his inability to drive, by exaggerating his symptoms when visiting medical providers, and by misrepresenting his involvement in prior automobile accidents. Constance counters that he did not know if he had suffered injury to the nerves in his right foot as a result of motorcycle accident that occurred in the 1990s. There is evidence, however, that he disclosed the occurrence of that accident and injury to his orthopedist, Dr. Hebert. Constance submits that it was Dr. Hebert who opined that such prior accident could have left Constance with a residual nerve problem in his right foot and possible susceptibility to nerve problems in his feet. Constance submits that he was mistaken when he stated in deposition that he had not driven before April 2012 and that he testified truthfully at trial regarding his driving habits/ability. He also admits that after viewing surveillance video showing inconsistencies between how he ambulated when attending doctors' appointments, Dr. Hebert expressed some concerns about the veracity of his complaints. Nevertheless, Constance contends that Dr. Hebert maintained his opinion that Constance suffered a work accident that left him disabled. Finally, Constance submits that he clarified at trial that he was involved in prior automobile accidents in which he was not driving at the time. In sum, Constance

4

contends that any of the inaccuracies pointed out by Appellants was either inconsequential or inadvertent and, thus, did not mandate a conclusion that he violated the fraud statute.

In denying Appellants' fraud defense, the WCJ stated the following in its oral reasons for judgment:

> There are, as could be expected, some minor discrepancies in parts of his testimony, but the law makes allowances for that if it appears that a claimant is more confused and forgetful than conniving. Granted, Mr. Constance is not the best historian, but there is very little daylight between the essentials of his testimony and the substance of the medical records.

With regard to the surveillance, the WCJ stated that Constance "presented reasonable, and I think truthful, explanations for all of the activities caught on the video" and that, after being shown the video, Dr. Hebert "did not seem impressed, certainly not enough to consider changing his work status restriction from 'sedentary.'"

After review of the conflicting testimony and evidence presented at trial, we find no manifest error in the WCJ's finding that Appellants did not carry their burden of proof regarding Constance's violation of La.R.S. 23:1208, especially in light of the WCJ's finding that Constance was a credible witness, as will be discussed more fully in the following section.

### *Constance's Credibility*

"In a workers' compensation case, as in other cases, the appellate court's review of factual findings is governed by the manifest error or clearly wrong standard." *Hebert v. C.G. Logan Constr., Inc.*, 06-612, p. 2 (La.App. 3 Cir. 11/2/06), 942 So.2d 77, 79. "Whether a claimant has carried his burden of proof

and whether testimony is credible are questions of fact to be determined by the workers' compensation judge." *Id.*

Appellants contend that they pointed out a myriad of inconsistencies and discrepancies between Constance's testimony and the evidence which shows that Constance is not credible. For example, Appellants refer to evidence showing that Constance was getting hydrocodone from the Veteran's Administration Medical Center in Alexandria, Louisiana, (VA) while treating with Dr. Hebert and Dr. Steven Staires, his pain management physician, and in violation of narcotic medication agreements that he had signed with them. Appellants also point to testimony from Drs. Hebert and Staires that Constance's reports of pain did not always follow the ordinary course of recovery. In addition, Appellants submit that the results of Functional Capacity Evaluations (FCEs) conducted in December 2011 and June 2012 showed discrepancies, such as his ability to descend stairs despite his complaints of left foot/ankle pain. Finally, Appellants submit that when showed a photograph purportedly showing Constance's foot on June 19, 2012, both Dr. Hebert and Dr. Staires testified that they never observed Constance's foot appearing as it did in the photograph.

Constance counters that the contemporaneous medical evidence from just two days after his initial accident, the physical therapy records, Dr. Hebert's records, and the testimony of Constance's wife corroborate his testimony regarding the occurrence of a workplace accident and resulting injury to his left foot. In addition, Constance submits that any breaches caused by his obtaining duplicate medications from the VA were relatively minor, especially given the fact that Dr. Staires is still treating him. Constance further submits that while the extent of his pain may not be within the norm, his doctors nevertheless agree that

his work accident caused his current left-foot neuritis that leaves him disabled and only able to do sedentary work. Finally, Constance argues that the aforementioned opinions of his doctors remained the same despite their having acknowledged some inconsistencies in the photograph and in his FCE results.

All of the discrepancies noted by Appellants were made known to the WCJ at trial, and, despite those discrepancies, the WCJ found Constance to be truthful. Given the "great deference" owed to the trier of fact, who was able to observe Constance's demeanor on the witness stand, we find no manifest error in the WCJ's determination that Constance was a credible witness. *See Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989).

### *Accident and Injury*

> A workers' compensation claimant has the burden of establishing by a preponderance of the evidence that an accident occurred on the job and that he sustained an injury. *Holiday v. Borden Chem.,* 508 So.2d 1381 (La.1987). A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. *Bruno v. Harbert Int'l, Inc.,* 593 So.2d 357 (La.1992). Corroboration of the worker's testimony may be provided by the testimony of co-workers, spouses, friends, or by medical evidence. *Id.* Barring circumstances that cast suspicion on the reliability of the worker's uncontradicted testimony, the fact finder should accept the testimony as true when determining whether the worker has discharged his burden. *Brown v. Kwok Wong,* 01-2525 (La.App. 1 Cir. 12/20/02), 836 So.2d 315.

*Hebert*, 942 So.2d at 79-80.

Appellants contend that Constance failed to satisfy the *Bruno* criteria relative to unwitnessed accidents, and, thus, the WCJ erred in finding that he proved the occurrence of work-related accidents to his left foot and right shoulder. *Bruno v. Harbert Int'l, Inc.*, 593 So.2d 357 (La.1992). They insist that because

7

Constance knew that his job was temporary, he had "an incentive to feign an accident" and, thereby, extend his employment. On the other hand, Constance submits that the evidence reveals that his supervisor was made aware of the injury to his left foot on the day it occurred and that an accident report was prepared, and Constance sought medical treatment with the employer's provider of choice within two days of the October 27, 2009 accident. Constance further submits that the evidence shows that he reported to both the VA and to Dr. Hebert that he had injured his right shoulder in December 2010, when he was descending stairs outside his home and had to catch himself to prevent himself from falling when his left foot gave out.

The WCJ concluded that Constance sustained a work-related accident that injured his left foot in October 2009 and that he suffered another accident in December 2010 that was related to his earlier accident, resulting in an injury to his right shoulder. His reasons for judgment provide:

> Not a single witness came forward to cast any suspicion on Mr. Constance's version of events on the rainy day when he says he slipped in the mud at a construction site, jamming his left foot into a hole, causing the injuries for which Dr. Hebert attempted to repair surgically. The accident seems to have been reported promptly and correctly. There was certainly nothing in the medical reports to suggest exaggeration of symptoms.

The WCJ further noted that Dr. Hebert's records revealed that Constance had "post operatively wrenched his shoulder" and that Dr. Hebert "directly related the shoulder experience with the failure of the injured foot to properly support the claimant's body." After noting that Appellants investigated the initial accident, verified its occurrence, and found Constance entitled to both medical and indemnity benefits, the WCJ found that Appellants "did absolutely no investigation of the shoulder injury," decided that it was not related to the original

8

compensable work accident, and became "convinced that Mr. Constance was actively involved in the commission of fraud."

There is no merit to Appellants' argument that Constance's testimony regarding the two accidents was not "corroborated by the circumstances following" their occurrence or that "other evidence discredits or casts serious doubt upon [Constance's] version of the incident." *Bruno*, 593 So.2d at 361. Moreover, Appellants' reliance on *Ardoin v. Firestone Polymers, L.L.C.*, 10-245 (La. 1/19/11), 56 So.3d 215, wherein the claimant did not report his accident to his employer until eighteen months after its occurrence is readily distinguishable from the instant matter. Here, the circumstances following both of Constance's accidents corroborated their occurrence, and Appellants' accusation that Constance manufactured those accidents is simply not supported by the evidence. The WCJ did not err in finding that Constance suffered from an injury-producing accident at work in October 2009, which led to an additional injury in December 2010.

## *Shoulder Injury*

Appellants argue that Constance's claim for the injury to his right shoulder is prescribed under La.R.S. 23:1209 because he did not make a claim for that injury until the second date of trial of this matter on January 31, 2013. Constance disputes that assertion and refers our attention to a VA progress note dated December 21, 2010, that contains a reference to a right-shoulder injury, a January 11, 2011 demand letter to the insurance adjuster seeking approval of an evaluation of his shoulder after a recent incident where his left foot gave out, a January 12, 2011 note from Dr. Hebert stating that he was going to refer Constance to a Dr. Williams for his shoulder pain, and an answer that he filed into the record on

December 6, 2011, wherein he listed a right-shoulder injury as one of the matters in dispute.[2]

Brenda Guillot, the insurance adjuster who handled Constance's file, admitted at trial that she had received Dr. Hebert's note that he was going to seek a referral to address Constance's shoulder injury. In light of that admission, coupled with the other record evidence showing that Appellants were put on notice of Constance's shoulder injury well within one year of its occurrence and within the context of this pending claim, we cannot say that the WCJ erred in concluding that Constance's right-shoulder injury was not prescribed.

## *Wage Earning Capacity*

> "The purpose of [SEBs] is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident." *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840 (La.7/1/97), 696 So.2d 551, 556. An employee is entitled to receive SEBs if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. La. R.S. 23:1221(3)(a). Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. *Banks*, *supra* at 556. "In determining if an injured employee has made out a prima facie case of entitlement to [SEBs], the trial court may and should take into account all those factors which might bear on an employee's ability to earn a wage." *Daigle v. Sherwin-Williams Co.*, 545 So.2d 1005, 1009 (La.1989) (quoting *Gaspard v. St. Paul Fire and Marine Ins. Co.*, 483 So.2d 1037, 1039 (La.App. 3 Cir.1985)). It is only when the employee overcomes this initial step that the burden shifts to the employer to prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the [employer's] community or reasonable geographic location. La. R.S. 23:1221(3)(c)(i); *Banks*, *supra* at 556; *Daigle*, *supra* at 1009.

---

[2] Claimant acknowledges that the answer references an October 3, 2011, rather than a mid-December 2010 shoulder injury, attributing the discrepancy to the fact that he fell several times due to his left foot giving out.

*Poissenot v. St. Bernard Parish Sheriff's Office*, 09-2793, pp. 4-5 (La. 1/9/11), 56 So.3d 170, 174 (alteration in original) (last alteration ours) (footnote omitted). In *Banks*, the supreme court stated that to "discharge its burden of proving job availability," an employer has to show, amongst other things, "the existence of a **suitable job** within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region." *Banks*, 696 So.2d at 557 (emphasis added). "By 'suitable job,' we mean a job that claimant is not only physically capable of performing, but one that also falls within the limits of claimant's age, experience, and education, unless, of course, the employer or potential employer is willing to provide any additional necessary training or education." *Id.*

Here, Appellants claim that the WCJ committed manifest error in finding that they failed to prove that Constance had a wage earning capacity of $9.25 per hour and was, thus, entitled to a reduced compensation rate based upon that figure. Appellants base their claim on the testimony of Dawn Marroquin, the vocational rehabilitation counselor, who after evaluating Constance, located four available jobs which Constance's doctors approved and which Appellants believed established Constance's wage earning capacity.

Constance vehemently disagrees with Appellants' argument in this regard, insisting that the jobs identified by Ms. Marroquin were not suitable in light of the disability he suffers as a result of his work accident, the strong medicine he takes for his pain resulting therefrom, and taking into consideration his hearing loss which is thoroughly documented in the VA records. Constance further submits

11

that he is not qualified for the jobs offered given his advanced age, his lack of office and computer skills, and his educational level.[3]

The WCJ determined that Appellants' improperly converted Constance's benefits to SEBs because none of the jobs offered by Appellants "came close to providing what the law calls, 'suitable employment.'" He questioned how Ms. Marroquin "could overlook the fact that Mr. Constance is profoundly hearing impaired," and he determined that the one-day computer course that Ms. Marroquin had Constance complete "did very little to bring this man who reads and writes at scarcely grade-school level to the technical requirements of some of the jobs for which he was sent to apply."

Conflicting evidence was offered at trial regarding Constance's ability to perform the four jobs offered to him by Ms. Marroquin. After being presented with that evidence and having observed Constance during the two-day trial of this matter, the WCJ determined that none of those jobs were suitable. Considering all of the evidence and testimony, we conclude that the WCJ was not manifestly erroneous or clearly wrong in finding that Appellants failed to prove that Constance had a wage earning capacity of $9.25 per hour.

### Right to SEBs after Layoff

Gregory Mouton, Constance's supervisor at Lafayette Steel, testified that Constance and most of his co-workers were laid off between November 6 and 7, 2009, when the Acadian Center for the Arts job for which they were hired was completed. Appellants assert that the WCJ erred in finding that Constance was entitled to SEBs after the date he was laid off, citing *Dufrene v. Southern*

---

[3] Although Constance testified that he completed the eighth grade, Ms. Marroquin stated that his reading, spelling, and math abilities measured at the fourth grade level.

*Industrial Contractors, Inc.*, 95-759 (La.App. 3 Cir. 1/31/96), 670 So.2d 290, for the proposition that when an employee is laid off as a result of economic circumstances, the employer's exposure for indemnity benefits ceases. Constance counters that *Dufrene* is distinguishable from the instant matter because the claimant therein was able to resume his work as a pipefitter after his work accident.

We agree that *Dufrene* is not controlling in this matter. In that case, we noted that "[p]laintiff offered no evidence to show that he could not earn ninety percent or more of his pre-accident wages." *Id.* at 293. Here, on the other hand, Constance presented ample evidence of his inability to do so. The WCJ did not err in finding Constance entitled to receive SEBs after the date of his layoff.

### *Penalties and Attorney Fees*

"The decision to impose penalties and attorney fees is essentially a factual issue subject to the manifest error or clearly wrong standard of review." *Weaver v. S. Erectors, Inc. of Fla.*, 10-783, p. 13 (La.App. 3 Cir. 12/8/10), 53 So.3d 547, 555. If an employer discontinues the payment of benefits and "such discontinuation is found to be arbitrary, capricious, or without probable cause, [the employer] shall be subject to the payment of a penalty . . . and a reasonable attorney fee for the prosecution and collection of such claims." La.R.S. 23:1201(I).

> A claim for benefits has been reasonably controverted when the employer "engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed."

*Weaver*, 53 So.3d at 555 (quoting *Brown v. Texas-LA Cartage, Inc.*, 98-1063, p. 9 (La. 12/1/98), 721 So.2d 885, 890). "An employer avoids the imposition of penalties and attorney's fees by satisfying its continuing obligation to investigate,

assemble, and assess factual information prior to it denying benefits." *Odom v. Kinder Nursing Home*, 06-1442, p. 24 (La.App. 3 Cir. 4/25/07), 956 So.2d 128, 141.

Appellants argue that because their vocational rehabilitation counselor identified four jobs that were approved by Constance's doctors, the WCJ committed manifest error in finding that its reduction of Constance's benefits was arbitrary and capricious so as to subject it to a penalty and attorney fees. Constance disagrees and submits that, rather than realistically taking into consideration his lack of transferrable job skills and his obvious hearing problems, Appellants improperly used the vocational rehabilitation process to lower his SEBs and to beef up its claim that he was guilty of fraud. As such, Constance submits that this court should affirm the WCJ's decision to award him a penalty for Appellants' improper reduction of his benefits.

In its oral reasons for judgment, the WCJ found that "[t]he reduction of his benefits and conversion to S.E.B. status fell short in all aspects of meeting the minimum requirements for doing so as set forth in [*Banks*, 696 So.2d 551.]" Given our affirmation of that finding, we cannot say that the WCJ committed manifest error in awarding Constance a penalty and attorney fees for Appellants' improper reduction of his indemnity benefits.

Appellants next argue that even if this court finds no error in the WCJ's finding that Constance suffered compensable accidents and did not violate the fraud statute, we should, nevertheless, find that the WCJ erred in awarding Constance any penalties and attorney fees because of what it terms "significant evidence calling into question" those findings. Constance disagrees, alleging that

Appellants ignored the evidence and unreasonably maintained that he fabricated his shoulder injury to bolster his claim for benefits.

With regard to Constance's right shoulder injury, the WCJ found:

> Undeterred by Dr. Hebert's request that his patient be evaluated by Dr. Williams, the insurer decided that the shoulder incident was not due in any fashion to the job ankle injury.

> I am still unclear as to precisely how the adjuster reached that conclusion. It certainly was not the result of any investigation because the record shows that there was none.

> From all accounts, it looks as if the insurer did a very thorough investigation of the initial work accident and then two years later decided it was all wrong. Then, she did absolutely no investigation of the shoulder injury and promptly decided her decision was totally correct.

> It appears that at some point, for some reason, the insurer became convinced that Mr. Constance was actively involved in the commission of fraud, and then spent a great deal of time, effort, and resources in proving it.

The record provides ample support for the WCJ's conclusion that Appellants did not reasonably controvert the compensability of Constance's right shoulder injury. Accordingly, we find no manifest error in the WCJ's award of a penalty and attorney fees on that basis.

## Quantum of Attorney Fees

An appellate court reviews the amount of attorney fees that a WCJ awards a claimant under the abuse of discretion standard. *Duplechain v. Town of Church Point*, 12-475, 12-476 (La.App. 3 Cir. 12/19/12), 107 So.3d 800.

Appellants argue that the amount of attorney fees awarded to Constance should be significantly reduced. Their argument focuses on the fact that Constance originally asserted that he was due penalties on several bases and that, over the course of trial, more bases were added while others were withdrawn.

Citing *Magbee v. Federal Express*, 12-77 (La.App. 3 Cir. 12/12/12), 105 So.3d 1048, Constance counters that an attorney fee award should be based on his attorney's efforts in regard to the entire litigation rather than on only the time spent on penalty-related issues.  In addition, Constance points out that not only did he prevail on all of the issues which he presented to the WCJ, but he was also successful in defending Appellants' claims that he was guilty of committing fraud and that he was never injured at all.

In its oral reasons for judgment, the WCJ remarked that Appellants insisted that Constance "was little more than a clever, conniving malingerer who staged and faked his 2009 injury in the first place" and that he "commit[ed] fraud in exaggerating his symptoms and by making material misrepresentations for the sole purpose of getting tax-free workers' compensation payments."  After reviewing the evidence, however, the WCJ determined that "[t]here was virtually no good reason to have questioned the occurrence of this accident in 2009, and there appears to be no better reason to bring the issue up some three of four years later."  The WCJ further found that there was "nothing in the medical reports to suggest exaggeration of symptoms."

Given the extremely contentious nature of this dispute, the amount of work that Constance's attorney devoted to this matter,[4] and the success that Constance's attorney achieved on behalf of his client, we find no abuse of discretion in the amount of the attorney fees award.

---

[4] Constance's attorney, Mark Zimmerman, filed a Fee Petition as an exhibit at trial wherein he detailed the seventy-two hours he spent on this matter.

## Constance's Answer to Appeal

Constance answered Defendant's appeal seeking additional attorney fees for the work done on appeal. "Awards of attorney fees in workers' compensation cases are essentially penal in nature, and are intended to deter indifference and undesirable conduct by employers and insurers toward injured employees." *Smith v. Quarles Drilling Co.*, 04-179, p. 6 (La. 10/29/04), 885 So.2d 562, 566. In *Nash v. Aecom Technology Corp.*, 07-990, p. 8 (La.App. 3 Cir. 2/6/08), 976 So.2d 263, 268, this court held that "[a] workers' compensation claimant is entitled to an increase in attorney fees to reflect additional time incurred in defending an employer/insurer's unsuccessful appeal." Accordingly, we award Constance additional attorney fees of $4,000.00 for the work done on this appeal.

## DECREE

For the forgoing reasons, the judgment in favor of James Constance and against Lafayette Steel Erector, Inc. and The Gray Insurance Company is affirmed. We award Constance additional attorney fees in the amount of $4,000.00 for work done on this appeal. Costs of this appeal are assessed against Lafayette Steel Erector, Inc. and The Gray Insurance Company.

**AFFIRMED.**